UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ORBIT ONE COMMUNICATIONS, INC., and DAVID RONSEN,<br><br>     Plaintiffs,<br><br>- against -<br><br>NUMEREX CORP.,<br><br>     Defendant. | 08-CV-0905 (LAK) (JCF) |
| NUMEREX CORP.,<br><br>     Plaintiff,<br><br>-against<br><br>SCOTT ROSENZWEIG and GARY NADEN,<br><br>     Defendants. | 08-CV-6233 (LAK) (JCF) |

**NUMEREX CORP.'S MEMORANDUM IN SUPPORT OF
<u>MOTION FOR RETURN OF STOLEN DOCUMENTS AND SANCTIONS</u>**

  Numerex Corp. ("Numerex") hereby moves for an order directing Plaintiff David Ronsen to return immediately to Numerex electronic documents that Ronsen secretly copied and then deleted from Numerex's server while Ronsen was an executive of Numerex. Numerex further requests that the Court impose costs on Ronsen and, in addition, order certain discovery so that the Court can determine what additional sanctions are warranted.

**<u>INTRODUCTION</u>**

  Ronsen was an executive of Numerex from August 1, 2007 through April 25, 2008. Ronsen is also the 84% owner of Plaintiff Orbit One Communications, Inc. ("Old Orbit One"). On August 1, 2007, Old Orbit One sold substantially all of its assets to Numerex, and Numerex

hired Ronsen to serve as president of its Satellite Division. The parties' agreements are governed by an extensively negotiated contract called the "Asset Purchase Agreement," which incorporates other agreements including an agreement between Ronsen and Numerex (called the "Severance and Non-Competition Agreement").

The Asset Purchase Agreement provided for a generous multi-million dollar guaranteed cash payment to Old Orbit One, and the Severance Agreement gave generous executive pay, cash payments and benefits to Ronsen. The Asset Purchase Agreement also calls for even larger incentive-based stock and cash payments if the Satellite Division performs in accordance with Ronsen's pre-closing financial projections. The contract documents call these payments an "Earn Out." The Asset Purchase Agreement ties the level of the payment to the degree to which the Satellite Division achieves or exceeds specific revenue and earnings targets. These targets – derived directly from the projections prepared by Ronsen himself – were incorporated into the Asset Purchase Agreement and called the "Business Plan." The future success of the Satellite Division – and the achievement of the Earn Out revenue and earnings targets – depends to a large degree on the success of a new product called the SX-1.

By October 2007, the Satellite Division (under Ronsen's direction) bought or ordered supplies to build 30,000 units of the SX-1. But in the first seven months following the August 1 acquisition, Ronsen and his team sold only 144 units of the SX-1. In October 2007 – only two months after closing the transaction – Ronsen concluded that he was likely to fail to meet his projections and began a campaign to blame Numerex for that failure.

In addition, Ronsen began to plan litigation. In November 2007, without informing Numerex, Ronsen went through Numerex e-mails and other electronic documents, copied them for his use in litigation, and then deleted them from Numerex's server. At the time Ronsen did

this, Numerex was not anticipating litigation. Numerex does not know how many documents Ronsen removed, but as described below, the volume appears to be quite extensive. Numerex does not know what e-mails and other documents Ronsen destroyed *without* saving copies, but Ronsen had the motive and the opportunity to destroy evidence. There may be no way to know what internal emails and other documents Ronsen simply destroyed. They are gone from the Numerex server and gone from Numerex's backup tapes.

Ronsen and Old Orbit One commenced this action January 8, 2008. Ronsen's counsel, Lowenstein Sandler PC ("Lowenstein Sandler") had many opportunities to disclose Ronsen's activities to Numerex and to return the documents. These opportunities came in the context of Lowenstein Sandler's claim that documents Old Orbit One had sold and delivered to Numerex – and which were thus on Numerex's servers – were nonetheless subject to a claim of privilege. In correspondence, counsel referred to these as the documents "in Numerex's possession." By referring to the documents in this manner, Lowenstein Sandler suggested that it was unaware that Ronsen had removed the disputed documents in November 2007, before litigation even began. Lowenstein Sandler did not disclose the truth until August 4, 2008.

## FACTS

Old Orbit One sold substantially all its assets to Numerex through the Asset Purchase Agreement. Ex. 1.[1] The Asset Purchase Agreement provided that – after closing – Numerex would operate the business of Old Orbit One as the "Satellite Division" of Numerex. *Id.* at p. 33. At the closing on August 1, 2007, Numerex also hired Ronsen to be president of the Satellite

---

[1] Documents referenced herein are attached as Exhibits ("Ex. __") to the Declaration of Brandon H. Cowart ("Cowart Decl."), dated August 26, 2008, submitted herewith.

Division pursuant to an employment agreement. Ex. 2. Ronsen thus served as a Numerex executive until his resignation from the company on April 25, 2008.

### A. Numerex Acquired All Information Residing on Old Orbit's Computer System And Hardware

Under the Asset Purchase Agreement, Old Orbit One sold its assets to Numerex: "Seller [Old Orbit One] hereby grants, sells, conveys, assigns transfers and delivers to Buyer [Numerex] all right title and interest of seller in and to . . . (b) all of the assets, properties and rights of Seller, of every kind and description, real, personal and mixed, tangible and intangible, wherever situated, that are used in the Business . . . ." Ex. 1, Asset Purchase Agreement § 1.1. The Asset Purchase Agreement also contained a list of the assets being sold, the "Included Assets." *Id.* § 1.1(a). Part of the "Included Assets" are "all computer software and hardware" of Old Orbit One such as its server and the laptop computer of Ronsen. *Id.* § 1.1(a)(i). Specifically listed as part of the "Included Assets" is "all information, **files**, records, **data**, plans, price lists, operations manuals, contracts and **recorded knowledge**, including customer, supplier, vendor, and subcontractor lists, related to any of the foregoing," including the Old Orbit One computer system and hardware. *Id.* Asset Purchase Agreement § 1.1(a)(x) (emphasis supplied).

In contrast to the "Included Assets" being transferred, the Asset Purchase Agreement contains a category of "Excluded Assets." Ex. 1, Asset Purchase Agreement § 1.1(b). Among the "Excluded Assets" is Old Orbit One's "Engagement Letter" with Lowenstein Sandler, dated April 25, 2007. Ex. 3 (document number 92). The list of Excluded Assets does not, however, include any other communications between Old Orbit One and Lowenstein Sandler. Thus, both title and possession of many such communications passed to Numerex on August 1, 2007, as part of the "Included Assets."

Numerex hired Ronsen to head the Satellite Division under terms set forth in the Severance and Non-Competition Agreement. Ex. 2. Under that agreement, Ronsen was a fiduciary of Numerex.[2] On the day he began his employment, Ronsen signed an acknowledgement that he had received a copy of Numerex's Associate Handbook (Ex. 5) and was responsible for reading and complying with it (Ex. 6).

The Associate Handbook provides that information stored on Numerex's computer equipment – as well as all e-mail sent or received through Numerex's system – is the property of Numerex: "All messages and transmissions composed, sent, stored or received on Numerex's Electronic Information and Communication Systems [*i.e.*, computer hardware and software] are and remain the exclusive property of the Company and are not to be considered private property of any associate." Ex. 5 at p. 22. The Associate Handbook states that employees may use Numerex's computer systems "only for the purpose of conducting its business or other Company approved uses" and "solely for Company or client business." *Id.* at pp. 31, 21. The Associate Handbook specifies that employees must "maintain strict confidentiality of all [Numerex] information." *Id.* at p. 8.

**B.    Ronsen Secretly Removed Documents from the Numerex Server To Aid His Lawsuit Against Numerex**

According to a disclosure by Lowenstein Sandler, Ronsen removed documents from the Numerex server in late November and/or December 2007, while planning his lawsuit against Numerex. Lowenstein Sandler's disclosure states that Ronsen "removed from the Numerex exchange servers their Outlook files (*i.e.*, e-mails with attachments, contacts and calendar items)

---

[2] Ex. 4, Exhibit D1 of the Severance Agreement, at p.1 ("The Employee shall hold in strictest confidence, as a fiduciary, any and all such Confidential Information, and shall comply with all instructions of the Company for preservation of the confidentiality of all such Confidential Information.").

that they reasonably believed were privileged," but "cast[ing] their nets fairly broadly" resulted in collecting "documents that are not privileged." Ex. 7 at p. 2.[3] Ronsen then deleted this information from Numerex's servers. *Id.* Again, in April 2008, in anticipation of terminating his employment at Numerex, Ronsen (and possibly other Old Orbit One employees) copied "their" Outlook files stored on Numerex's server, this time supposedly not taking the extra step of deleting the information. Ronsen provided this information to his litigation counsel, Lowenstein Sandler. *Id.*

### C. Ronsen Misappropriated The Information While His Counsel Was Conferring With Numerex's Counsel On Resolving Its Privilege Status

Ronsen took all these actions – copying and deleting Numerex property – while serving as a Numerex executive. Numerex did not know of Ronsen's conduct until Ronsen's counsel disclosed these actions on August 4, 2008. Exs. 8, 9. To the contrary, Numerex's repeated communications with Lowenstein Sandler since January 2008 reveal that Numerex did not know of this activity, and that Lowenstein Sandler itself either did not know or, if it did know, affirmatively misled Numerex.

As early as January 2008, counsel for Old Orbit One claimed a privilege with respect to attorney-client communications between Old Orbit One and Lowenstein Sandler that pre-dated the acquisition on August 1, 2007. Numerex, however, believed that under the Asset Purchase Agreement, "[o]nce ownership and control of the [pre-August 1] files passed to Numerex, ownership and control of the privilege likewise passed." Ex. 10. Numerex considered its title

---

[3] The word "their" suggests that other employees of Numerex – Gary Naden and Scott Rosenzweig (former Old Orbit One and Numerex executives who are defendants in the consolidated Case No. 08-CV-6233) – cooperated with Ronsen in the theft of Numerex property, though it is possible that Ronsen alone simply rummaged through the electronic data of other Numerex employees searching for information to remove from the Numerex server.

and possession to such documents to be dispositive, but it did not want to take the law into its own hands if Old Orbit One were to persist in a claim of privilege.

To ensure that the privilege issue was resolved in a transparent manner, Numerex agreed not to review any potentially privileged information of Old Orbit One created either pre- or post-August 1. Ex. 11 (confirming that "we [Numerex's counsel] are not, nor are we planning, to review the potentially privileged information identified in my letter to [Lowenstein Sandler] until the privilege issue is resolved."). The parties exchanged several proposals for managing the potentially privileged information in Numerex's possession. Exs. 12, 10, 13.

Numerex also informed Lowenstein Sandler that back-up disks having copies of Ronsen's Outlook files and other potentially privileged information were taken out of rotation, ensuring that information contained in Ronsen's Outlook files were preserved and available for discovery. Ex. 10. Numerex was unaware that Ronsen already had deleted the potentially relevant information. Ex. 9. It is unclear whether Lowenstein Sandler knew of Ronsen's defalcation at that point, but the firm said nothing to correct Numerex's misimpression.

The parties held a Rule 26(f) conference on March 26. Numerex proposed that the parties exchange letters setting forth their respective positions on the privilege issue. As summarized in a letter following the meet and confer, Numerex proposed to manage the dispute over potentially privileged materials located on the Orbit One server and back-up tapes as follows:

- "Emails and other data on the Orbit One server appearing on or after August 1, 2007 is not privileged;

- "For pre-August 1, 2007 data, we have a disagreement. To manage this disagreement, we agreed to have a third-party vendor search emails for communications between Lowenstein Sandler PC and David Ronsen. You will select the vendor, so long as the vendor is reasonably acceptable to us. You will pay the vendor.

- 7 -

> You will identify to the vendor and to us the domain names which you believe indicate privileged information. The vendor will use these domain names to search the Numerex server. For data not flagged using your domain search names, the vendor will turn it to over to Numerex. The vendor will provide you a copy of the flagged data for review. After your review, you agree to provide us a privilege log of materials you believe are privileged and to produce to us the non-privileged and/or redacted materials. This pre-August 1 data will be stored by the vendor until its privileged status is resolved. This protocol would apply as well to data contained in the back-up disks to the Orbit One server though we agreed that this data is not reasonably accessible.

- "We disagree over whether any privilege exists for the pre-August 1 data. We also disagree over whether any privilege attaches to communications between Lowenstein Sandler and David Ronsen acting in his personal capacity rather than as an executive of Orbit One Communications, Inc. Finally, we disagree over whether any privilege attaches to any communication disclosed to Thomas Stoughton, a financial advisor to Orbit One Communications, Inc. In an effort to resolve these disputes, you will send us a letter setting out an explanation of your position, citing authorities. We will then send you a letter setting out an explanation of our position, citing authorities. If we cannot agree after good-faith efforts, we will seek the early intervention of the Court."

Ex. 14. Lowenstein Sandler did not identify any inaccuracies in the April 1 letter, despite being asked to "[L]et [Numerex's counsel] know if the above accurately describes the results of our meeting." *Id.* One might deduce from this silence that Lowenstein Sandler still did not know about Ronsen's secret removal of Numerex property. If the firm had known, surely it would have advised Numerex at that time that Ronsen had already removed the disputed documents from the servers, so that this elaborate mechanism of hiring a third-party vendor was entirely unnecessary and that the third-party vendor would not find any e-mails or other pre-acquisition communications between Lowenstein Sandler and Old Orbit One (or anyone else, for that matter).

In a follow-up letter, Numerex asked if Lowenstein Sandler intended to send a letter setting forth their position on the privilege dispute as had been agreed at the Rule 26(f)

conference. Ex. 15. If none were forthcoming, Numerex stated that it would consider itself "free to review all pre-closing email of Old Orbit One." *Id.*

On April 25, Ronsen terminated his employment at Numerex. Sometime before that, he made a second sweep of his documents, copying them. Ex. 7 at p. 2. He claims not to have deleted any documents from Numerex's server this time.

On April 28, Lowenstein Sandler sent its privilege-dispute letter, asserting that Old Orbit One's "communications with counsel and its retained professionals regarding the merger negotiations and the Asset Purchase Agreement" were still privileged. Ex. 16 at p. 4. Lowenstein Sandler repeated the prior proposal that a third-party vendor be hired to review Numerex's back-up tapes for privilege and asserted that any confidential documents relating to the Asset Purchase Agreement, regardless of date of creation, were privileged. *Id.* at p. 5. Did Lowenstein Sandler know at that time that the third-party vendor exercise would reveal that Ronsen had deleted the information? We do not know.

Responding by letter dated May 16, Numerex provided clear authority that the disputed information was no longer privileged. Ex. 17. Instead of incurring the expense of hiring a third-party vendor, Numerex proposed to begin searching for responsive information on May 30, two weeks after the May 16 letter. As it had done before, Numerex was careful to give Old Orbit One the opportunity to protect its alleged interests, writing that if Old Orbit One moved for a protective order before May 30, Numerex would not alter the status quo pending resolution of the privilege issue. *Id.* at p. 4.

The parties scheduled a conference call with Judge Francis for May 30, the last day Old Orbit One could move for a protective order before Numerex would begin searching the allegedly privileged information. Ex. 18. The purpose of the May 30 conference call was to

raise with Judge Francis, among other matters, this privilege dispute. Cowart Decl. ¶ 2. Immediately before starting the call, Lowenstein Sandler withdrew Old Orbit One's assertion of privilege for "documents in Numerex'[s] possession." Ex. 19. Again, Lowenstein Sandler had refused to say whether – at this point – it knew that Ronsen had secretly removed the disputed documents. However, it stands to reason that Lowenstein Sandler did know – why else the sudden change in position, on the eve of discovery of Ronsen's misbehavior?

### D.    Consequences of Ronsen Misappropriating Information

Numerex cannot determine through examining its computer system what information Ronsen deleted from its server. The Satellite Division server's is backed-up by twelve computer disks, one disk being used per day. Cowart Decl. ¶ 3. These disks are rotated daily, meaning that data removed from the server would be preserved for twelve days until that back-up disk was reused. *Id.* When Old Orbit One and Ronsen commenced their lawsuit in January 2008, Numerex removed from rotation all twelve back-up disks. Ex. 10. But Ronsen had deleted the files in November or December 2007. The back-up disks containing the deleted files had already been recycled by the time Ronsen commenced this lawsuit. Likewise, because Lowenstein Sandler waited from April (when Ronsen left Numerex), until August 4 to disclose Ronsen's actions, Numerex back-up disks were again recycled, leaving Numerex with no records to determine whether Ronsen merely copied the files or deleted information as well.

\* \* \* \* \* \* \*

As required by Rule 37, the parties attempted to resolve this dispute in good faith. *See* Yalowitz Decl. ¶¶ 2-5. Numerex wrote a letter requesting return of the misappropriated information on August 5 – the day after learning of Ronsen's conduct. Ex. 8. Lowenstein Sandler returned the information Ronsen took in April 2008, but refused to return the documents removed by Ronsen in November and/or December 2007. Ex. 20. Later, Lowenstein Sandler

- 10 -

stated that Ronsen "only removed pre-August 1, 2007 communications." Ex. 21 at p. 1. That is not accurate, according to Lowenstein Sandler's August 4 letter.[4] In addition, Lowenstein Sandler stated: "When Numerex announced it was going to make copies of the Obit [*sic*] servers, Mr. Ronsen, in order to protect Plaintiffs' data, removed it from the servers." Ex. 21 at p.1. That contention is not consistent with the timing of the events in question. Ronsen removed the documents in November 2007 – in anticipation of litigation. He did not delete the documents in response to collection and preservation steps Numerex was taking. Numerex did not take those steps until *after* litigation commenced in January 2008. Ex. 10 at p.1. Numerex did not even know that Ronsen was planning litigation in November 2007.

## ARGUMENT

Ronsen's discovery abuses are egregious. Stealing an employer's documents with intent to use them in litigation is sanctionable misconduct. "Discovery in the litigation context presupposes ownership of the documents will remain with whomever holds title, while allowing access to the trier of fact, and litigants, in specifically delineated legal proceedings." *Pillsbury, Madison & Sutro v. Schectman*, 55 Cal. App. 4th 1279, 1288 (Cal. Ct. App. 1997). Here, Ronsen not only secretly took Numerex documents and provided them to his counsel, he deleted the files from Numerex's server. Ronsen has refused to return documents despite requests that he do so. The Court should not condone this misconduct.

---

[4] *Compare* Ex. 7 at p.2 (stating that "our clients . . . removed from the Numerex exchange servers their Outlook files (*i.e.*, e-mails with attachments, contacts, and calendar items) that they reasonably believed were privileged.").

### A. This Court Has The Inherent Authority To Order The Return of Numerex's Documents

The Court should order Ronsen and his counsel to return any Numerex documents in their possession. "It has long been recognized that courts have the inherent equitable authority 'over their own processes, to prevent abuses, oppression, and injustices.'" *Herrera v. The Clipper Group, L.P.*, 1998 WL 229499 at *1 (S.D.N.Y. 1998) (citation omitted) (collecting cases). Court-supervised discovery is "not meant to be supplemented by the unlawful conversion of an adversary's proprietary information." 1998 WL 229499 at *1. Accordingly, this Court has the "inherent authority to sanction a party who attempts to use in litigation material improperly obtained outside the discovery process." *Fayemi v. Hambrecht & Quist, Inc.*, 174 F.R.D. 319, 324 (S.D.N.Y. 1997) (Francis, M.J.). The appropriate remedy for such misconduct "has been dismissal of the employee's complaint or an order that the employee return those documents." *Appel v. Fischbach Corp., Inc.*, 1998 WL 470497 at *7 (E.D.N.Y. Aug. 10, 1998).

### B. Ronsen Must Return Numerex's Information As A Sanction

That company documents are company property – and that employees who remove such documents for their own purposes breach their fiduciary duties to the company – cannot be seriously disputed. *See Bigda v. Fischbach Corp.*, 898 F. Supp. 1004, 1017 (S.D.N.Y. 1995). Further, the duty of an employee (or former employee) not to use such information contained therein for his or her own purposes "is an absolute, and not a relative, duty." *Kaufman v. Int'l Bus. Mach. Corp.*, 97 A.D.2d 925, 927 (N.Y. App. Div. 3d Dep't 1983).

Here, it is undisputed that, in November and/or December 2007, and again in April 2008, Ronsen began secretly appropriating, for his own use, documents from Numerex's computer system. It is not disputed that Numerex did not authorize Ronsen to access its servers to remove information from them. Nor is it disputed that Ronsen had access to Numerex's computer

system and hardware solely by virtue of his position as an executive and fiduciary of Numerex. Even if Ronsen returns the documents he kept, there is no way to know whether or to what extent Ronsen simply destroyed incriminating evidence, such as internal email among Ronsen and his associates, Scott Rosenzweig and Gary Naden, who are also parties to this case.

This Court has sanctioned parties for engaging in similar conduct. In *Fayemi*, for example, before his termination, the plaintiff Fayemi "entered [his employer's] offices and obtained information from the computer files of his supervisor" relevant to his anticipated employment discrimination lawsuit. 174 F.R.D. at 321. In so doing, Fayemi "gained access to [] private areas without permission or authority and copied confidential materials," including "enter[ing] his former supervisor's office and access[ing] the [supervisor's] computer" to obtain relevant employee bonus information. *Id.* at 324. Although not dismissing Fayemi's action, the Court concluded that a sanction prohibiting Fayemi's use of the stolen information was "the proper remedy." *Id.* at 326.[5]

Ronsen's justification for his actions – that he removed pre-acquisition information based on a "good faith" belief it was not sold and that he removed other information to protect the confidentiality of those pre-acquisition communications[6] – is implausible. The contract plainly included all data as "Included Assets." *Cf. Fayemi*, 174 F.R.D. at 325 (dismissing plaintiff's arguments that he was entitled to access confidential information as "unfounded" and "wholly incredible."). Furthermore, what Ronsen seems actually to be saying is that as early as November 2007 – if not sooner – he was anticipating litigation. If he deleted documents *for any reason* in anticipation of litigation, he has engaged in sanctionable, indeed criminal, conduct.

---

[5] The Court rescinded this sanction because of the defendants' own unclean hands in failing to properly preserve information as part of their discovery obligations. *Id.* at 326-27.

[6] Ex. 7 at p.2.

*First*, as noted above, the Asset Purchase Agreement could not be clearer in including as part of the transaction all information contained on the Old Orbit One server. Since pre-acquisition communications resided on the server and back-up disks, Old Orbit One sold and delivered this information to Numerex along with the sale of the Old Orbit One server. Other courts, when discussing whether a party waives the attorney-client privilege for pre-transaction communications, rely on similar transfers of assets to find the privilege waived for information transferred with the assets. *See, e.g., In re In-Store Advertising Sec. Litig.*, 163 F.R.D. 452, 458 (S.D.N.Y. 1995) ("where confidential attorney-client communications are transferred from a corporation selling assets to the corporation buying assets, the privilege is waived as to those communications"); *Robbins & Myers, Inc. v. J.M. Huber Corp.*, 2004 WL 21384304 at *3 (W.D.N.Y. May 9, 2003) ("defendants may not claim the attorney-client protection or work-product protection with respect to any documents that were left in [the acquired company]'s possession after it had been purchased by" plaintiff).

*Second*, the Asset Purchase Agreement confirms that Old Orbit One knew how to carve out documents from the "Included Assets" being transferred, and even excluded its retainer letter with Lowenstein Sandler. Ex. 3 (Schedule 1.1(b) to Asset Purchase Agreement listing "Excluded Assets"). The *absence* of "communications" between Old Orbit One and Lowenstein Sandler on the list of "Excluded Assets" demonstrates that Old Orbit One did not exclude such communications, so that title – as well as possession – passed to Numerex at the closing.

*Third*, the employee handbook specifies that all information stored on the server is the property of Numerex.[7] Thus, Ronsen was aware of, and consented to, Numerex being the owner

---

[7] Ex. 5 at p. 22 ("The telephone system, facsimile machines, voice mail system, electronic mail system (e-mail), computes, computer network system, the Internet, any other electronic communication system, and the equipment and data stored on these systems ('Numerex's Electronic Information and Communication
Footnote continued on next page

of information stored on the Numerex server, as well as the laptop computer assigned to him and in his Outlook files stored on Numerex's server. This includes information Ronsen either removed from the Numerex server or copied.[8]

### C. The Court Should Impose Appropriate Sanctions

There are a number of sanctions the Court may impose against Ronsen and Lowenstein Sandler for discovery misconduct, including Numerex's costs for bringing this motion, disqualification of counsel, preclusion of the use of information attained from misappropriated documents, an adverse-inference instruction to the jury, or even dismissal of Ronsen's and Old Orbit One's claims. *See Herrera*, 1998 WL 229499 at *3-5 (listing potential sanctions). The proper sanction depends on two factors: prejudice to the adversary and severity of the wrongdoing. For prejudice, the sanction must prevent "the party's wrongful acquisition of evidence [from] redounding to its benefit in the litigation." *Fayemi*, 174 F.R.D. at 325. For the severity of wrongdoing factor, the Court examines what sanctions would "deter similar acts in the future by that party and others." *Id.*

*First*, Ronsen must return the information. *See, e.g., Pillsbury, Madison & Sutro*, 55 Cal. App. 4th at 1289 (characterizing order mandating return of stolen documents as "the least sanction cognizable in these circumstances.").

---

Footnote continued from previous page
Systems') are Company property and remain so at all times. All messages and transmissions composed, sent, stored or received on Numerex's Electronic Information and communication Systems are and remain the exclusive property of the Company and are not to be considered private property of any associate.")

[8] *Compare Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 405 (2d Cir. 2006) (mere presence of plaintiff's information on computer system leased by defendant did not give defendant property right over information, noting that defendant's argument for ownership "could be tenable if [plaintiff] had agreed to such terms, but the [] lease agreement contains no such language transferring the ownership of [plaintiff's] personal property that he saved on the [computer system] to" defendant).

*Second*, Ronsen must pay the costs of bringing this motion. *See, e.g., Herrera*, 1998 WL 229499 at *3 (ordering that "expenses defendants incurred in making this motion to be borne by plaintiff.").

*Third*, other sanctions may well be warranted. Ronsen secretly deleted email and other documents at a time when he was anticipating litigation. Numerex may never know whether Ronsen and his associates destroyed evidence that was harmful to the case they were planning. Such internal emails were stored *only* on Numerex's server, and once Ronsen deleted them and 12 days passed, there may be no way to verify whether Ronsen preserved a copy of every document he deleted. Only Ronsen knows, and he had the motive and opportunity to destroy evidence.

In order to determine what other sanctions are warranted, we ask that the Court begin by requiring Lowenstein Sandler to answer the following questions:

(1) When did Ronsen remove the documents from Numerex?

(2) Who assisted Ronsen with the removal?

(3) Did Ronsen or anyone else make copies of any such documents?

(4) When did Ronsen advise Lowenstein Sandler that he had removed the documents?

(5) When did Ronsen provide the documents to Lowenstein Sandler?

(6) Who has reviewed the documents?

(7) Have any documents been deleted by Ronsen and if so, when and by whom?

(8) What evidence does Ronsen have that he did not destroy documents?

We also request that the Court then hold a hearing to determine the facts and consider what additional sanctions should be imposed.

## CONCLUSION

For the foregoing reasons, Numerex respectfully requests that the Court grant its motion and order Ronsen to return all documents or other information, communication or other property in his possession, custody or control. Numerex further requests reimbursement of its costs and legal fees incurred in making this motion. Finally, Numerex requests that Lowenstein Sandler, as officers of this Court, answer questions listed above within 10 days of the Court's order so that the Court may conduct a hearing to consider what additional sanctions should be imposed.

Dated: New York, New York
       August 27, 2008

ARNOLD & PORTER LLP

By _____
   Kent A. Yalowitz
   Kent.Yalowitz@aporter.com
   Brandon H. Cowart
399 Park Avenue
New York, NY  10022-4690
Telephone:  (212) 715-1000
Facsimile:  (212) 715-1399

*Attorneys for Defendant and Counterclaim Plaintiff Numerex Corporation*