```
UNITED STATES DISTRICT COURT                    (ECF)
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
ORBIT ONE COMMUNICATIONS, INC.,    :
and DAVID RONSEN,                  : 08 Civ. 0905 (LAK) (JCF)
                                   :
              Plaintiffs,          :
                                   :
     - against -                   :
                                   :
NUMEREX CORP.,                     :
                                   :
              Defendant.           :
- - - - - - - - - - - - - - - - - - -:
NUMEREX CORP.,                     : 08 Civ. 6233 (LAK) (JCF)
                                   :
              Plaintiff,           :
                                   :
     - against -                   :        MEMORANDUM
                                   :        AND  ORDER
SCOTT ROSENZWEIG, GARY NADEN, and  :
LAVA LAKE TECHNOLOGIES, LLC,       :
                                   :
                                   :
              Defendants.          :
- - - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE
```

These consolidated cases involve a series of claims concerning a corporate acquisition gone awry. Orbit One Communications, Inc. ("Old Orbit One") and David Ronsen, one of its principals, originally filed suit against Numerex Corporation ("Numerex"). Numerex responded by asserting a series of counterclaims and by filing suit against Scott Rosenzweig and Gary Naden, two of Old Orbit One's key employees.[1] Numerex has since brought the instant

---

[1] Numerex subsequently filed an amended complaint adding Lava Lake Technologies, LLC as a defendant on the theory that it is an entity through which Mr. Ronsen, Mr. Rosenzweig, and Mr. Nader are violating a non-competition agreement.

1

motions: one seeking enforcement of a subpoena issued to counsel for Old Orbit One and David Ronsen, the other seeking the return of certain electronically-stored information removed by Mr. Ronsen from a Numerex computer. In connection with this latter motion, Numerex also seeks attorneys' fees and costs.

Background

On July 31, 2007, Old Orbit One sold substantially all of its assets to a specially created subsidiary of Numerex called Orbit One Communications, LLC ("New Orbit One"). (Complaint ("Compl."), ¶ 1). David Ronsen had founded and operated Old Orbit One, which was a leading provider of satellite-based tracking devices and related services. (Compl., ¶¶ 15-19). At the date of sale, Mr. Ronsen owned 84% of Old Orbit One's stock.[2] (Declaration of David A. Ronsen dated Oct. 3, 2008 ("Ronsen Decl."), ¶ 1).

The terms of the sale were governed by an Asset Purchase Agreement (the "APA"). Numerex tendered approximately 5.5 million dollars at the time of sale. (APA, attached as Exh. 1 to Compl., § 1.3(a)). Numerex also agreed to pay Old Orbit One a series of "earn outs" -- additional payments in cash and stock -- if New Orbit One met or exceeded revenue and earnings projections for 2007 through 2009. (APA, § 1.3; Earn Out Agreement, attached as Exh. B

_____

[2] The remaining stock was held by Old Orbit One's other principal employees, Mr. Rosenzweig and Mr. Naden. (Letter of John J.D. McFerrin-Clancy dated Sept. 16, 2008 ("McFerrin-Clancy 9/16/08 Letter") at 5).

to APA; Compl., ¶ 2). The earn out opportunity was significant: approximately 4.5 million dollars in cash and 2.5 million shares of Numerex stock were reserved in escrow for these payments. (Compl., ¶ 2).

In order to maximize the potential benefit to Old Orbit One from the performance-based earn out agreement, Mr. Ronsen negotiated a position as New Orbit One's President. (Severance and Non-Competition Agreement ("Employment Agreement"), attached as Exh. 2 to Compl.; Compl., ¶¶ 1, 5, 35). He was to run New Orbit One from Old Orbit One's former headquarters in Montana with Numerex's corporate support. (Compl., ¶¶ 11-12, 29-35). Pursuant to the Employment Agreement, Numerex could terminate Mr. Ronsen "for cause," including failure to meet New Orbit One's performance targets. (Employment Agreement, § 2). However, if Numerex terminated Mr. Ronsen "without cause" or if he resigned "for good reason," Numerex would be obligated to pay the full earn out. (Employment Agreement, § 3(b)). The APA and Mr. Ronsen's Employment Agreement were negotiated and executed together. (Compl., ¶ 1). The law firm of Lowenstein Sandler PC ("Lowenstein") represented Old Orbit One throughout the acquisition negotiations. (Letter of Matthew Savare dated Aug. 4, 2008 ("Savare 8/4/08 Letter"), attached as Exh. 7 to Declaration of Brandon H. Cowart dated Aug. 27, 2008, at 2).

New Orbit One's sales were low in the fall of 2007, and its

revenues were well below target. (Answer and Counterclaims ("Answer") at 2, 18-21). Mr. Ronsen and Old Orbit One filed suit in January 2008 alleging that Numerex caused New Orbit One's poor performance.[3] Specifically, the plaintiffs contend that Numerex breached the APA and the Employment Agreement by failing to provide sufficient corporate support and by impeding Mr. Ronsen's ability to exercise genuine control over New Orbit One's operation. (Compl., ¶¶ 85, 93). These transgressions, the plaintiffs argue, render Numerex liable for full payment of the earn out plus other damages. (Compl. at 22, 24-25). Numerex denied these allegations and asserted several counterclaims, including a claim that Mr. Ronsen contrived his complaints to escape the negative consequences of New Orbit One's poor performance and therefore breached his fiduciary duties. (Answer at 27-30). Mr. Ronsen resigned from New Orbit One and Numerex in April 2008. (Letter of Kent A. Yalowitz dated Aug. 28, 2008 at 4).

Since the commencement of this lawsuit, the parties have disagreed about whether, and to what extent, the attorney-client privilege bars discovery of pre-acquisition communications between the plaintiffs and Lowenstein. On July 1, 2008, the defendants issued a document subpoena to Lowenstein. The subpoena demanded all documents "concerning the drafting, negotiation, evaluation,

---

[3] In December 2007, the plaintiffs again retained Lowenstein as counsel in connection with the current litigation. (Savare 8/4/08 Letter at 2).

analysis, execution, performance, or breach" of the Old Orbit One-Numerex transaction, including communications about the APA, the Employment Agreement, and the business plan that established New Orbit One's target sales and revenues. (Subpoena to Lowenstein Sandler PC ("Subpoena"), attached as Exh. 6 to Letter of Kent A. Yalowitz dated Aug. 28, 2008). In a letter dated August 4, 2008, Lowenstein refused to comply with the subpoena, arguing that Numerex already possessed substantially all non-privileged documents related to the transaction. (Savare 8/4/08 Letter at 1). Lowenstein reiterated the position maintained by the plaintiffs throughout this discovery dispute: the attorney-client privilege bars discovery of all pre-acquisition communications between the plaintiffs and Lowenstein that concern the Old Orbit One-Numerex acquisition. (Letter of John J.D. McFerrin-Clancy dated Sept. 16, 2008 ("McFerrin-Clancy 9/16/08 Letter") at 3-4).

In the same August 4, 2008 letter, Lowenstein disclosed that Mr. Ronsen had removed certain files from his work computer in late 2007.[4] (Savare 8/4/08 Letter, at 2). These files consisted of

---

[4] Lowenstein also revealed that Mr. Ronsen had copied certain files from Numerex's server immediately prior to his resignation in April 2008. (Savare 8/4/08 Letter at 2). These files were never removed from Numerex. (Ronsen Decl., ¶¶ 50-51). In addition, the plaintiffs mailed a DVD containing the copied files to the defendants in August 2008. (Letter of Matthew Savare dated Aug. 8, 2008, attached as Exh. 12 to Declaration of John J.D. McFerrin-Clancy dated Oct. 3, 2008 ("McFerrin-Clancy Decl.")). Therefore, any dispute regarding the files copied by Mr. Ronsen in April 2008 is moot.

"documents and e-mails that [Mr. Ronsen] kept in the ordinary course of business" on his Old Orbit One computer, which was by that time owned by Numerex. (Ronsen Decl., ¶ 23). Lowenstein assured Numerex's counsel that it possessed all of these files in unaltered form and planned to return all non-privileged documents to Numerex. (Savare 8/4/08 Letter at 2). According to Mr. Ronsen, he has "not deleted or manipulated a single file"; "[e]ach and every file . . . has always been and continues to remain preserved, secure, and readily accessible." (Ronsen Decl., ¶ 31).[5]

Numerex filed the instant motions shortly after receiving that letter. In its first motion, Numerex seeks enforcement of the subpoena issued to Lowenstein pursuant to Rule 45(c)(2)(B) of the Federal Rules of Civil Procedure. The primary goal of its second motion is to force the plaintiffs to return, unaltered, all electronic documents removed by Mr. Ronsen.

Discussion

As a preliminary matter, New York state law governs this dispute, which is based on diversity jurisdiction. (Defendant's Notice of Removal, ¶ 3). The claims and defenses in this case arise out of the APA and the corresponding Employment Agreement. The APA designates New York law as the controlling law, and neither party challenges the efficacy of that designation. (APA, § 9.7).

---

[5] Lowenstein has halted its review of the disputed files until this motion is determined. (McFerrin-Clancy Decl., ¶ 21).

The Federal Rules of Evidence typically control civil actions in federal court, regardless of subject matter jurisdiction. However, where state law supplies the rule of decision, state law determines the existence and scope of the attorney-client privilege. Fed. R. Evid. 501; accord Gulf Islands Leasing, Inc. v. Bombardier Capital, Inc., 215 F.R.D. 466, 470 (S.D.N.Y. 2003); Shamis v. Ambassador Factors Corp., 34 F. Supp. 2d 879, 892 (S.D.N.Y. 1999). However, federal law always controls application of the attorney work product doctrine. See Fed. R. Civ. P. 26(b)(3); Tompkins v. R.J. Reynolds Tobacco Co., 92 F. Supp. 2d 70, 75 (N.D.N.Y. 2000).

A.   Attorney-Client Privilege

"The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law." Upjohn Co. v. United States, 449 U.S. 383, 389 (1981). By facilitating "full and frank communication between attorneys and their clients," the attorney-client privilege lays the foundation for effective representation. United States v. Zolin, 491 U.S. 554, 562 (1989) (quoting Upjohn, 449 U.S. at 389). By doing so, it promotes "broader public interests in the observance of law and administration of justice." Upjohn, 449 U.S. at 389.

"New York law governing the attorney-client privilege is generally similar to accepted federal doctrine, albeit with certain variants." Shamis, 34 F. Supp. 2d at 892 (quoting Bowne of New

York City, Inc. v. AmBase Corp., 150 F.R.D. 465, 470 (S.D.N.Y. 1993)). Privilege attaches to attorney-client communications, made in confidence, "for the purpose of obtaining legal advice and directed to an attorney who has been consulted for that purpose." New York Times Newspaper Division of The New York Times Co. v. Lehrer McGovern Bovis, Inc., 300 A.D.2d 169, 171, 752 N.Y.S.2d 642, 645 (1st Dep't 2002)(quoting Rossi v. Blue Cross & Blue Shield of Greater New York, 73 N.Y.2d 588, 593, 542 N.Y.S.2d 508, 511 (1989)); accord C.P.L.R. § 4503(a) (protecting "confidential communication[s] made between the attorney or his or her employee and the client in the course of professional employment"). Although New York has codified the attorney-client privilege, it continues to rely on the common law to determine the scope of protection afforded. Mayorga v. Tate, 302 A.D.2d 11, 13, 752 N.Y.S.2d 353, 355 (2d Dep't 2002) (quoting Spectrum Systems International Corp. v. Chemical Bank, 78 N.Y.2d 371, 377, 575 N.Y.S.2d 809, 814 (1991)).

Several principles are well established:

First, it is beyond dispute that no attorney-client privilege arises unless an attorney-client relationship has been established. Such a relationship arises only when one contacts an attorney in his capacity as such for the purpose of obtaining legal advice or services. Second, not all communications to an attorney are privileged. In order to make a valid claim of privilege, it must be shown that the information sought to be protected from disclosure was a "confidential communication" made to the attorney for the purpose of obtaining legal advice or services. Third, the burden of proving each element of the privilege rests upon the

> party asserting it. Finally, even where the technical
> requirements of the privilege are satisfied, it may,
> nonetheless, yield in a proper case, where strong public
> policy requires disclosure.

Priest v. Hennessy, 51 N.Y.2d 62, 68-69, 431 N.Y.S.2d 511, 514

(1980) (citations omitted). In general, unless the privilege is

waived, privileged communications are "absolutely immune from

discovery." New York Times Newspaper Division, 300 A.D.2d at 171-

72, 752 N.Y.S.2d at 644-45; accord C.P.L.R. § 3101(b).

In cases of corporate representation, the attorney-client

privilege belongs to the corporation. See Securities and Exchange

Commission v. Credit Bancorp, Ltd., 96 F. Supp. 2d 357, 359

(S.D.N.Y. 2000). However, as the corporation is "an artificial

creature of the law," the privilege operates to protect

confidential communications made by corporate agents who supply

needed information to the corporation's counsel. See Upjohn Co.,

449 U.S. at 389-90. Delineating the precise limits of the

attorney-client privilege in the corporate context is necessarily

a fact-intensive task; determinations must be made on a

case-by-case basis. Id. at 395-97.

    B.    The Privilege and Changes in Corporate Ownership

The acquisition of one corporation by another raises questions

concerning the extent to which the attorney-client privilege

persists after the sale. Under New York state law, whether the

attorney-client relationship transfers to a corporation's new

owners "turns on the practical consequences rather than the

formalities of the particular transaction." _Tekni-Plex, Inc. v. Meyner & Landis_, 89 N.Y.2d 123, 133, 651 N.Y.S.2d 954, 959 (1996). If the transaction is nothing more than an asset transfer, the successor company does not acquire the former company's privilege. _Id._; _accord_ _In re In-Store Advertising Securities Litigation_, 163 F.R.D. 452, 458 (S.D.N.Y. 1995). Conversely, "where efforts are made to run the pre-existing business entity and manage its affairs, successor management stands in the shoes of prior management and controls the attorney-client privilege with respect to matters concerning the company's operations." _Tekni-Plex_, 89 N.Y.2d at 133, 651 N.Y.S.2d at 959; _cf._ _Commodity Futures Trading Commission v. Weintraub_, 471 U.S. 343, 349 (1985) ("[W]hen control of a corporation passes to new management, the authority to assert and waive the corporation's attorney-client privilege passes as well."). As a practical matter, the predecessor company lives on when its business operations are continued, notwithstanding the technical legal changes effected by the acquisition and merger. _Tekni-Plex_, 89 N.Y.2d at 134, 651 N.Y.S.2d at 960. The new owner and management are entitled to all pre-acquisition confidential communications regarding the predecessor company's operations because such advice is germane to the business' continued performance. _Id._ at 134, 651 N.Y.S.2d at 960. Indeed, "[t]his conclusion comports with [the successor company's] right to invoke the pre-merger attorney-client relationship should it have to

prosecute or defend against third-party suits involving the assets, rights or liabilities that it assumed from [the predecessor company]." Id. at 137, 651 N.Y.S.2d at 961.

In Tekni-Plex, in analyzing questions concerning control of the attorney-client privilege after a change in corporate ownership, the New York Court of Appeals distinguished between confidential communications regarding a company's ongoing operations and those related to its acquisition. Id. at 135-36, 651 N.Y.S.2d at 960-61. The court noted that the predecessor company and its shareholders were joined in an adversarial relationship against the successor company during the acquisition negotiation process. Id.; cf. International Electronic Corp. v. Flanzer, 527 F.2d 1288, 1292 (2d Cir. 1975) (rejecting claim that counsel representing predecessor company during merger negotiations had any duty to successor company because companies were "on opposite sides of the negotiations" during course of counsel's representation). Any subsequent claims arising out of the acquisition agreement necessarily pitted the seller, the predecessor company, against the buyer, the successor company. Tekni-Plex, 89 N.Y.2d at 138-39, 651 N.Y.S.2d at 962-63. The court concluded that attorney-client communications relating to the acquisition transaction were independent of those concerning business operations; thus, ownership of such communications did not transfer with the sale of the predecessor company's rights and

tangible or intangible assets.  Id.  Therefore, the predecessor company continued to control the attorney-client privilege with respect to confidential communications concerning the acquisition, and was entitled to refuse to disclose such communications to the successor company.  Id. at 130, 651 N.Y.S.2d at 957.  In so holding, the court indicated that a contrary position, one allowing a successor company to succeed to control of confidential communications regarding the acquisition, would significantly chill attorney-client communication during such transactions.[6]  Id. at 139, 651 N.Y.S.2d at 963.

C.   Motion to Enforce the Subpoena Issued to Lowenstein

Numerex seeks an order pursuant to Rule 45(c)(2)(B) compelling Lowenstein to produce the documents requested by the subpoena. Unless it offers an adequate excuse, a party or non-party must obey a valid subpoena.  See Fed. R. Civ. P. 45(e).  However, the court must not enforce a subpoena that "requires disclosure of privileged or otherwise protected matter" or presents an "undue burden."  Fed. R. Civ. P. 45(c)(3).

---

[6] The court found further support for its conclusion in the language of the Tekni-Plex purchase agreement which provided that the predecessor company and its sole shareholder would indemnify the successor company under certain circumstances: "[p]lainly the parties contemplated a unity of interest between [the predecessor company] and [its sole shareholder] should a dispute arise between the buyer and seller regarding the representations and warranties." Tekni-Plex, 89 N.Y.2d at 135, 651 N.Y.S.2d at 960.  Although this indemnification provision was an aspect of the court's holding, it was not central to the court's legal analysis.

12

The plaintiffs argue that the documents sought by Numerex are either privileged or cumulative of documents already possessed by Numerex or its lawyers, and thus overly burdensome. (McFerrin-Clancy 9/16/08 Letter). Specifically, they claim that all pre-acquisition, confidential communications between Mr. Ronsen and Lowenstein concerning the Old Orbit One-Numerex transaction are privileged.[7] (McFerrin-Clancy 9/16/08 Letter at 5-6). The plaintiffs have agreed not to assert the privilege with respect to any documents currently in Numerex's possession, including communications transmitted through Numerex's e-mail system. (E-mail of John J.D. McFerrin-Clancy dated June 4, 2008, attached as Exh. 8 to McFerrin-Clancy Decl.). Therefore, the plaintiffs only seek to protect communications concerning the acquisition agreement that are in Lowenstein's exclusive possession. Privileged communications contained within the files removed by Mr. Ronsen fall into this category.

Numerex posits several objections to the plaintiffs' assertion of privilege. It contends that communications to or from Mr. Ronsen concerning his Employment Agreement were outside the scope of the attorney-client relationship between Lowenstein and Old

---

[7] The plaintiffs concede that any relevant communications involving third parties are not privileged. (McFerrin-Clancy 9/16/08 Letter at 7).

Orbit One and are thus not privileged client communications.[8] (Letter of Kent A. Yalowitz dated Oct. 2, 2008 ("Yalowitz 10/2/08 Letter") at 3). More generally, Numerex contends that it gained control of all Old Orbit One documents, including those related to the acquisition, when it purchased Old Orbit One's assets. (Letter of Kent A. Yalowitz dated Aug. 28, 2008 at 8; Reply Memorandum of Law in Support of Numerex's Motion for Return of Stolen Documents and Sanctions ("Numerex Reply") at 11-12). In the alternative, Numerex argues that any pre-acquisition confidential communications remaining on Old Orbit One servers after August 1, 2008 lost their privileged status by virtue of the acquisition, regardless of whether Numerex obtained physical possession of them. (Numerex Corp.'s Memorandum in Support of Motion for Return of Stolen Documents and Sanctions ("Numerex Memo.") at 14-15; Numerex Reply at 12).

### 1. Communications between Mr. Ronsen and Lowenstein

Mr. Ronsen was the founder, director, and 84% shareholder of Old Orbit One. He directed Lowenstein in its representation of Old Orbit One, so the attorney-client privilege attached to confidential communications between Lowenstein and Mr. Ronsen

---

[8] Numerex makes the same arguments with regard to communications to and from Mr. Naden and Mr. Rosenzweig, the other principals of Old Orbit One, about the terms of their employment. (Yalowitz 10/2/08 Letter at 3). Accordingly, the analysis here with respect to Mr. Ronsen is applicable to confidential communications with Mr. Naden and Mr. Rosenzweig as well.

during the course of this representation.  See Tekni-Plex, 89 N.Y.2d at 132, 651 N.Y.S.2d at 959.  Mr. Ronsen's Employment Agreement was negotiated contemporaneously with the APA and was integrated into the final agreement.  He was placed in control of New Orbit One's operations to maximize the potential for Old Orbit One to benefit from the performance-based earn out agreement. (Compl., ¶¶ 5, 35).  The terms of Mr. Ronsen's employment were a crucial part of the acquisition negotiation and final deal.  There is simply no reason to presume that Lowenstein's communications with Mr. Ronsen concerning the Employment Agreement were for any purpose other than obtaining legal advice on Old Orbit One's behalf.  Thus, the attorney-client privilege protects all confidential communications between Lowenstein and Mr. Ronsen concerning his Employment Agreement.

2.  Control of the Privilege After the Sale of Assets

The Tekni-Plex analysis is directly applicable here.  Numerex bought all of the assets, properties, and rights used in Old Orbit One's business.  (APA, § 1.1).  It did so in order to continue Old Orbit One's business operations through New Orbit One.  Under Tekni-Plex, Numerex is entitled to all privileged communications related to continued business operations because it needs this information to run the business effectively.  Conversely, communications between Lowenstein and the plaintiffs concerning the acquisition transaction are not necessary for New Orbit One's

continued business operations. Indeed, these communications fall outside the scope of the APA's express language, which conveys only what is "used in the Business."[9] (APA § 1.1).

Furthermore, as in Tekni-Plex, the claims involved in this litigation derive from the acquisition agreement and the corresponding negotiations, at a time when the plaintiffs and Numerex were in an adversarial relationship. Allowing Numerex to control Old Orbit One's privilege would lead to a fundamentally unfair result, "the equivalent of turning over to the buyer all of the privileged communications of the seller concerning the very transaction at issue." Tekni-Plex, 89 N.Y.2d at 138, 651 N.Y.S.2d at 962. Numerex cannot both pursue the rights of the buyer and simultaneously assume the attorney-client rights of the buyer's adversary, Old Orbit One. Id. Old Orbit One retained ownership of, and continues to control, the attorney-client privilege as to confidential communications with Lowenstein concerning the acquisition transaction.

### 3.   Waiver of Privilege After the Sale of Assets

"The fundamental questions in assessing whether waiver of the privilege occurred are, whether the client intended to retain the confidentiality of the privileged materials and whether he took

---

[9] In addition, like the agreement at issue in Tekni-Plex, the APA includes indemnity provisions that preserve separate identities between the seller-predecessor company, Old Orbit One, and the buyer-successor company, Numerex, with regard to certain post-acquisition claims. (APA, § 1.5(b)).

reasonable precautions to prevent disclosure." Manufacturers and Traders Trust Co. v. Servotronics, Inc., 132 A.D.2d 392, 399, 522 N.Y.S.2d 999, 1004 (4th Dep't 1987); accord New York Times Newspaper, 300 A.D.2d at 172, 752 N.Y.S.2d at 645-46. Furthermore, as "the waiver inquiry depends heavily on the factual context in which the privilege was allegedly waived," courts must look carefully at the particular circumstances of each case to determine whether, and to what extent, waiver occurred. In re Grand Jury Proceedings, 219 F.3d 175, 188 (2d Cir. 2000).

Certain privileged communications remained on Mr. Ronsen's work computer after August 1, 2007 when ownership of all Old Orbit One's property, including all computers, transferred to Numerex. (Ronsen Decl., ¶¶ 13-14, 18-30). However, Numerex did not have physical possession or immediate control of Old Orbit One's computer hardware, including its employee shared drive, until January 2008. (Ronsen Decl., ¶ 14; Letter of Brandon Cowart dated Feb. 7, 2008, attached as Exh. 2 to McFerrin-Clancy Decl.). By that time, Mr. Ronsen had removed all possibly privileged communications concerning the acquisition from the office's computers and servers. (Ronsen Decl., ¶¶ 22-30).

Numerex argues that Old Orbit One waived its right to assert privilege with respect to any documents remaining on its computers after August 1, 2008 because title transferred to Numerex at that time. To support its position, Numerex relies primarily on In re

17

_In-Store Advertising Securities Litigation_, 163 F.R.D. 452
(S.D.N.Y. 1995). There, the court held that a predecessor company
waived any privilege attached to documents actually possessed by
its successor company concerning the predecessor's business
operations. _Id._ at 458. _In-Store_, however, is inapposite. It did
not involve litigation between the predecessor company and
successor company concerning the merger transaction; rather, the
underlying case was a shareholders' suit arising from an initial
public offering of the predecessor company's stock. _Id._ at 452.
Therefore, the successor company needed the purportedly privileged
documents to defend against liabilities that it inherited directly
from the predecessor company. _Id._ at 452, 457-58; _see_ _Tekni-Plex_,
89 N.Y.2d at 136, 651 N.Y.S.2d at 961. Furthermore, _In-Store_
apparently involved documents that were physically transferred to
the successor company. _In-Store_, 163 F.R.D. at 456 (explaining
that the contested documents were given to the successor company
and subsequently transferred to a third party).

The question of waiver in the instant case is more closely
analogous to situations where an employee claims privilege for
documents saved to the hard drive of a company-owned computer.[10]
Neither the Second Circuit nor the New York Court of Appeals has

---

[10] To be clear, the plaintiffs here are not asserting privilege
for any communications sent over Numerex's e-mail system or saved
to a Numerex employee shared drive. All such communications are in
Numerex's possession.

specifically addressed the extent to which information stored on an employer's computer system can be a confidential communication for purposes of the attorney-client privilege. See Curto v. Medical World Communications, Inc., No. 03 Civ. 6327, 2006 WL 1318387, at *4 (E.D.N.Y. May 15, 2006); Scott v. Beth Israel Medical Center Inc., 17 Misc. 3d 934, 940, 847 N.Y.S.2d 436, 441 (N.Y. Sup. Ct. 2007) (noting that no New York case discussed applicability of attorney-client privilege to confidential e-mails sent via employer's e-mail server). The lower state and federal cases that have addressed this issue have focused on an employer's ability and right to access the information at issue, and whether the privilege-claiming employee had notice of the employer's practices and policies. See, e.g., Scott, 17 Misc. 3d at 939-43, 847 N.Y.S.2d at 440-44 (surveying relevant federal and state cases). In Curto, an employee sought to protect confidential communications that she created on and saved to her company-owned computer but never transmitted through the company's e-mail system. 2006 WL 1318387, at *1. The company argued that its "E-Mail/Computer Privacy Policy" precluded the employee from asserting privilege: "Employees expressly waive any right of privacy in anything they create, store, send, or receive on the [company-owned] computer." Id. The employee, who primarily used her company-owned computer in her home office, argued that her computer files were protected from disclosure because her company lacked physical access. Id. at *1,

5. "The heart of the overriding question," according to the court, was whether the employee was "so careless as to suggest that she was not concerned with the protection of the privilege." Id. at *5. The court concluded that the employee's expectation of confidentiality was reasonable under the circumstances, company policy notwithstanding. Accordingly, the court upheld her assertion of privilege.

There is no case law to support the proposition that Mr. Ronsen automatically waived Old Orbit One's privilege for documents remaining on his work computer after its title passed to Numerex. There is also no support for the proposition that Numerex's company policies change this conclusion. Numerex argues that Mr. Ronsen should have known that documents stored on company computers were not private, based on language in the company handbook. However, as in Curto, Numerex never had ready access to Mr. Ronsen's computer. At all relevant times, Mr. Ronsen worked from New Orbit One's offices in Bozeman, Montana, from the same location where Old Orbit One had been headquartered. (Compl., ¶¶ 29-35; Ronsen Decl., ¶¶ 2, 18; McFerrin-Clancy 9/18/08 Letter at 3). Numerex's other offices were located in Georgia and Pennsylvania. (Ronsen Decl., ¶ 12). Numerex did not send personnel to Montana to gain access to New Orbit One's computers until January 2008. (Ronsen Decl., ¶ 14; McFerrin-Clancy Decl., ¶ 9). Under these circumstances, Mr. Ronsen's expectation of confidentiality was reasonable. There was

thus no waiver of privilege; any confidential communications concerning the acquisition agreement stored on Mr. Ronsen's Old Orbit One computer retained their privileged status.[11]

4. Undue Burden

A party contending that a subpoena should be quashed pursuant to Rule 45(c)(3)(A)(iv) must demonstrate that compliance with the subpoena would be unduly burdensome.  See Jones v. Hirschfeld, 219 F.R.D. 71, 74-75 (S.D.N.Y. 2003); Concord Boat Corp. v. Brunswick Corp., 169 F.R.D. 44, 48-49 (S.D.N.Y. 1996).

> An evaluation of undue burden requires the court to weigh the burden to the subpoenaed party against the value of the information to the serving party.  Whether a subpoena imposes an "undue burden" depends upon "such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed."

Travelers Indemnity Co. v. Metropolitan Life Insurance Co., 228 F.R.D. 111, 113 (D. Conn. 2005) (quoting United States v. International Business Machines Corp., 83 F.R.D. 97, 104 (S.D.N.Y. 1979)); accord Night Hawk Ltd. v. Briarpatch Ltd., No. 03 Civ.

---

[11] Numerex's company handbook states that all data stored on company computers is company property and should not be considered private property of any particular employee.  (Numerex Corp. Associate Handbook ("Numerex Employee Handbook"), attached as Exh. 5 to Declaration of Brandon H. Cowart dated Aug. 27, 2008, at 22). However, all data stored on company computers is subject to disclosure except for "communications [that] may be subject to the attorney-client privilege. . . or some other protection which is recognized by the law." (Numerex Employee Handbook at 22).  Given this language, it is uncertain whether an employee's expectation of confidentiality would be unreasonable under any circumstances.

1382, 2003 WL 23018833, at *8 (S.D.N.Y. Dec. 23, 2003).
Ultimately, "[t]he determination of issues of burden and
reasonableness is committed to the sound discretion of the trial
court." Concord Boat Corp., 169 F.R.D. at 49; accord In re
Fitch,Inc., 330 F.3d 104, 108 (2d Cir. 2003).

Numerex seeks production of all documents "concerning the
drafting, negotiation, evaluation, analysis, execution,
performance, or breach" of the Old Orbit One-Numerex transaction.
(Subpoena). Since Lowenstein has represented the plaintiffs
throughout the current litigation, it likely possesses a large
number of responsive documents protected by the attorney-client
privilege or the attorney work product doctrine. However,
Lowenstein may not assert a blanket claim of privilege and
completely refuse to comply with the document request. Rather,
Lowenstein bears the burden of establishing that particular
communications are privileged. Pursuant to Local Civil Rule 26.2,
in order to assert a valid claim of privilege, Lowenstein must
produce a privilege log identifying the nature of the privilege
being claimed and describing the documents to be protected.
Furthermore, Lowenstein possesses some non-privileged, highly
relevant documents. For example, Lowenstein admits that it has
non-privileged communications with Old Orbit One's financial
advisor Thomas Stoughton concerning the business plan that
established New Orbit One's target sales and revenues. (McFerrin-

Clancy Decl., ¶¶ 7, 16).  All such third-party communications must be disclosed.

To lessen the burden posed by reviewing and recording a large quantity of protected communications, Lowenstein may provide a categorical privilege log rather than a traditional, itemized privilege log.  See In re Rivastigmine Patent Litigation, 237 F.R.D. 69, 87 (S.D.N.Y. 2006) ("A categorical log may be used where (a) a document-by-document listing would be unduly burdensome and (b) the additional information to be gleaned from a more detailed log would be of no material benefit to the discovering party in assessing whether the privilege claim is well-grounded.").  However, Lowenstein must justify its assertion of privilege with regard to each category, and the description of each category must provide sufficient information for Numerex to assess any potential objections to the assertions of attorney-client privilege.

   D.   Motion for Return of Stolen Documents

In its motion for return of stolen documents, Numerex argues that the files removed by Mr. Ronsen in late 2007 should be returned to it notwithstanding the existence of any attorney-client privilege.  (Numerex Reply at 4, 15).  Numerex also contends that it is entitled to the attorneys' fees and costs incurred in making this motion.  (Numerex Memo. at 15-17).  Finally, Numerex seeks an order directing Lowenstein to answer certain questions posed in Numerex's original supporting memorandum.  (Numerex Memo. at 16).

The crux of Numerex's claim is that Mr. Ronsen wrongfully obtained and removed Numerex's files. Numerex relies on cases like Fayemi v. Hambrecht & Quist, Inc., 174 F.R.D. 319 (S.D.N.Y. 1997), to support its position that Mr. Ronsen should be sanctioned. In that case, after Mr. Fayemi's employment was terminated, he went into his former employer's office after hours, gained access to his supervisor's private areas -- indisputably without permission or authority -- and copied confidential materials. Id. at 322. The court found that Mr. Fayemi's actions were "clearly wrongful" and "sufficiently serious to warrant a significant sanction." Id. at 325. Accordingly, the court prohibited the plaintiff from relying on the wrongfully-obtained information. Id. at 326.

Several key facts differentiate Mr. Ronsen's case from Fayemi and similar cases cited by Numerex. Mr. Ronsen did not obtain his adversary's confidential evidence. The files Mr. Ronsen accessed were his own, saved on the computer he used in the regular course of business. (Ronsen Decl., ¶ 23). Furthermore, there has been no spoliation of evidence: Mr. Ronsen attests that he did not destroy or alter the files he took and that the files are in Lowenstein's possession. (Ronsen Decl., ¶¶ 31-36); see West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir. 1999) (defining spoliation). As the documents have been preserved, Numerex will obtain all non-privileged documents in unaltered form. (Ronsen Decl., ¶ 31). Finally, "the vast majority" of files removed by Mr. Ronsen were

either "old, personal, and not related in any way to Numerex, the APA, or Orbit's business or operations" or protected by attorney-client privilege. (Ronsen Decl., ¶¶ 29, 30). As explained above, files that were unrelated to the continued business operations of New Orbit One were not acquired by Numerex. Mr. Ronsen could not have stolen files from Numerex that Numerex did not own.

To the extent that the removed documents were irrelevant or privileged, Mr. Ronsen gained no unfair advantage by obtaining and removing the files, and Numerex therefore suffered no prejudice. See Fayemi, 174 F.R.D. at 326. The only prejudice to Numerex was delayed production of the removed documents as a result of Lowenstein's failure to disclose the existence of these documents at an earlier date. (McFerrin-Clancy Decl., ¶¶ 3-19). This prejudice is slight, and will be fully remedied when Numerex receives the removed documents.

With the exception of privileged communications, Lowenstein must immediately produce the removed documents, unaltered and in full, to Numerex. For any of the removed documents as to which a privilege is asserted, Lowenstein must create a traditional, itemized privilege log in accordance with Local Civil Rule 26.2(a). Sanctions are not warranted. Therefore, Numerex is not entitled to an award of attorneys' fees and costs or to an order requiring additional discovery. If Numerex wishes to obtain additional information about this matter, it can do so by taking depositions

or serving interrogatories.

This determination is without prejudice to Numerex bringing a new motion for sanctions if further discovery shows that Mr. Ronsen in fact removed documents from Numerex that were neither privileged nor personal. Furthermore, if Numerex were to discover that Mr. Ronsen destroyed or altered the files he removed, it would be entitled to seek sanctions.

## Conclusion

For the reasons discussed above, confidential communications between the plaintiffs and Lowenstein concerning the Old Orbit One-Numerex transaction are privileged and immune from disclosure. Lowenstein must respond to the subpoena it received by producing to Numerex all non-privileged documents, including all non-privileged communications among the documents removed by Mr. Ronsen from his Old Orbit One computer. For any removed documents as to which a privilege is claimed, Lowenstein shall create a traditional, itemized privilege log in accordance with Local Civil Rule 26.2(a). For all other purportedly privileged documents, Lowenstein shall produce a categorical privilege log. Each party shall bear its own attorneys' fees and costs.

SO ORDERED.

James C. Francis IV
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
        October 31, 2008

Copies mailed this date:

John J.D. McFerrin-Clancy, Esq.
Lowenstein Sandler, PC
1251 Avenue of the Americas
New York, NY 10220

Kent A. Yalowitz, Esq.
Brandon H. Cowart, Esq.
Arnold & Porter LLP
399 Park Avenue
New York, NY 10022-4690