UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ORBIT ONE COMMUNICATIONS, INC.,
and DAVID RONSEN,

         Plaintiffs/Counterclaim Defendants,

  - against -

NUMEREX CORP.,

         Defendant/Counterclaim Plaintiff.

Civil Action No. 08-0905 (LAK) (JCF)

---

NUMEREX CORP.,

         Plaintiff/Counterclaim Defendant,

  - against -

SCOTT ROSENZWEIG, GARY NADEN,
and LAVA LAKE TECHNOLOGIES, LLC,

         Defendants/Counterclaim Plaintiffs.

Civil Action No. 08-6233 (LAK) (JCF)

**MEMORANDUM OF LAW
IN SUPPORT OF
DEFENDANT/COUNTERCLAIM
PLAINTIFF NUMEREX CORP.'S
MOTION FOR A JURY INSTRUCTION
ON THE ISSUE OF SPOLIATION OF
EVIDENCE AND OTHER RELIEF**

---

GARY NADEN, DAVID RONSEN, SCOTT
ROSENZWEIG, ORBIT ONE
COMMUNICATIONS, INC., and LAVA
LAKE TECHNOLOGIES, LLC,

         Plaintiffs/Counterclaim Defendants,

  - against -

NUMEREX CORP.,

         Defendant/Counterclaim Plaintiff.

Civil Action No. 08-11195 (LAK) (JCF)

Kent A. Yalowitz
Emily A. Kim
ARNOLD & PORTER LLP
399 Park Avenue
New York, New York  10022-4690
Telephone:  (212) 715-1000
Facsimile:  (212) 715-1399
*Attorneys for Numerex Corp.*

---

March 8, 2010

NY: 498911v5

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................................ 1

FACTS ................................................................................................................................... 1

A.     Background ................................................................................................................. 1

B.     November to December 2007:  Plaintiffs Prepare for Litigation and Simultaneously Delete Electronic Documents from Numerex's Server ...................................... 4

C.     January to April 2008:  Ronsen and Orbit One Initiate Litigation and Continue to Surreptitiously Steal and Destroy Relevant Documents .................................... 6

     1.     Numerex's Backup Tapes ............................................................................ 7
     2.     Ronsen and Orbit One Use Subordinates to Gather Numerex Documents Pertaining to the Numerex-Orbit One Dispute ......................... 7
     3.     Removal of Computers and Hard Drives and Deletion of Documents From Numerex Servers ........................................................................... 8
     4.     Upon Resignation, Ronsen Claims to Have Turned Over All of Numerex Property ....................................................................................... 10

D.     April 2008 and Beyond:  Post-Resignation Theft and Destruction Continues ................. 11

     1.     Destruction of Stolen Desktop Computer ................................................. 11
     2.     Destruction of E-mails Forwarded to Ronsen's Personal E-mail Account After His Resignation ................................................................. 11

E.     Numerex Begins to Discover Plaintiffs' Document Destruction, and Files A Motion for Sanctions ............................................................................................... 11

ARGUMENT ........................................................................................................................ 15

I.     Numerex Is Entitled to An Adverse Inference ................................................................ 15

     A.     Ronsen and Orbit One Willfully Destroyed Relevant Evidence While a Litigation Hold Was In Place .......................................................... 16
     B.     Ronsen and Orbit One Acted With a Culpable State of Mind ........................... 17
     C.     The Evidence Ronsen and Orbit One Destroyed Was Relevant to Numerex's Claims and Defenses ..................................................... 21
     D.     Appropriate Inference for Plaintiffs' Willful Spoliation ..................................... 23

          1.     Requested Jury Charge ................................................................. 23
          2.     Other Possible Adverse Instructions ........................................... 24

II.     Numerex Is Entitled to Other Sanctions As Well ........................................................... 25

CONCLUSION ..................................................................................................................... 27

# TABLE OF AUTHORITIES

Page

*In re Am. Preferred Prescription, Inc.*,
   14 Fed. Appx. 92 (2d Cir. 2001) ........................................................25

*Brown v. Coleman*,
   No. 07 Civ. 1345, 2009 WL 2877602 (S.D.N.Y. Sep. 8, 2009) ............................................26

*Byrnie v. Town of Cromwell Bd. of Educ.*,
   243 F.3d 93 (2d Cir. 2001) ........................................................16, 17

*Doe v. Norwalk Cmty. College*,
   248 F.R.D. 372 (D. Conn. 2007) ........................................................25

*Gutman v. Klein*,
   No. 03 Civ. 1570, 2008 WL 5084182 (E.D.N.Y. Dec. 2, 2008) ............................................26

*Knowlton v. Teltrust Phones, Inc.*,
   189 F.3d 1177 (10th Cir. 1999) ........................................................24

*Kronisch v. United States*,
   150 F.3d 112 (2d Cir. 1998) ........................................................15, 21, 23

*Pension Comm. of the Univ. of Montreal Pension Plan v.*
   *Banc of Am. Secs., LLC*,
   No. 05 Civ. 9016(SAS), 2010 WL 184312 (S.D.N.Y. Jan. 15, 2010) ........................... *passim*

*Reilly v. Natwest Mkts. Group, Inc.*,
   *181 F.3d 253 (2d Cir. 1999)* ........................................................21, 26

*Residential Funding Corp. v. DeGeorge Fin. Corp.*,
   306 F.3d 99 (2d Cir. 2002) ........................................................ *passim*

*West v. Goodyear Tire & Rubber Co.*,
   167 F.3d 776 (2d Cir. 1999) ........................................................15, 23, 24

*Zimmermann v. Associates First Capital Corp.*,
   251 F.3d 376 (2d Cir. 2001) ........................................................24

Defendant and counterclaim plaintiff Numerex Corp. ("Numerex"), by this motion, respectfully requests an order (1) granting Numerex an instruction to the jury with respect to plaintiffs/counterclaim defendants Orbit One Communications, Inc. ("Orbit One") and David Ronsen for their willful spoliation of evidence while under a duty to preserve that evidence, (2) granting Numerex its attorneys' fees and costs associated with Orbit One and Ronsen's conduct in this regard, and (3) such other relief that the Court deems proper and just.

## PRELIMINARY STATEMENT

Ronsen and Orbit One have admitted to willfully destroying evidence relevant to this litigation while subject to a duty to preserve that evidence. Their willful disregard of their document preservation obligations is without excuse and blatantly challenges the integrity of the judicial process. Because of their conduct, no one will ever know what was in the documents they destroyed. Ronsen and Orbit One should not be permitted to benefit from their wrongdoing. Under the law, Numerex is entitled to a jury instruction permitting the jury to draw an adverse inference from Ronsen and Orbit One's spoliation. Numerex respectfully seeks such relief, plus monetary sanctions.

## FACTS

### A.    Background[1]

On August 1, 2007, Numerex acquired the assets of Orbit One and hired its principals, David Ronsen, Scott Rosenzweig, and Gary Naden ("Plaintiffs"). Num. Motion at 13; Ex. 4. In the Asset Purchase Agreement (the "APA"), Orbit One made extensive representations and

---

[1]    In Numerex's April 17, 2009 Memorandum of Law in Support of Numerex Corp.'s Motion for Partial Summary Judgment on Liability ("Numerex's Summary Judgment Motion," "Numerex's Motion," or "Num. Motion"), Numerex set forth many of these facts in significantly greater detail. Numerex refers the Court to the Statement of Facts in that Motion. Additionally, Numerex's Motion was accompanied by voluminous exhibits. In order not to burden the Court with duplicative exhibits, Numerex cites herein to several exhibits accompanying its Summary Judgment Motion, which exhibits are identified herein as "Ex. [numeral]." Any new exhibits accompanying the instant motion are attached as exhibits to the Declaration of Emily A. Kim, dated March 8, 2010 ("Kim Decl."), and are identified herein as "Ex. [letter]."

warranties, and Plaintiffs personally guaranteed Orbit One's obligations to Numerex.  Ex. 1, APA, Art. III ("Warranties and Representations of Seller"); Ex. 1, APA (Ex. I, "Guaranty").  Plaintiffs had claimed during negotiations that they expected Orbit One to experience growth of 15% to 20% per year and provided Numerex with a financial forecast that reflected these projections.  Rosenzweig Dep. 34; Exs. 13, 16, 17.[2]  But Plaintiffs did not disclose to Numerex that Orbit One's business depended on the occurrence of a major hurricane or other extraordinary natural disaster, as they later acknowledged on deposition.  Ronsen Dep. 146; Naden Dep. 79-80.  Jeffrey Huhtanen, a former officer and shareholder of Orbit One, testified that if a "big hurricane or a big disaster" did not occur, "the sales would not happen," and that Orbit One's forecasting was like throwing "darts on a dart board."  Huhtanen Dep. 36-37.  Plaintiffs' main concern just before closing was "not hitting our numbers," and they acknowledged among themselves that it was "likely" that they would miss their numbers "at some point" in the next two years by "20% or 25% . . . for two consecutive quarters."  Rosenzweig Dep. 112-13; Exs. 20-21.  They never disclosed this to Numerex.

Plaintiffs also represented during negotiations and in the APA that Orbit One did not face any present threat of litigation, and that Orbit One had obtained a license to use, in its critical SX-1 product, technology patented by a company called Axonn, L.L.C. ("Axonn").  Num. Motion at 7-13.  Plaintiffs did not disclose that Axonn had threatened litigation throughout negotiations—including a pointed threat on the eve of closing that Plaintiffs hid even from their own lawyers. *Id.* at 8-13.  When shown undisclosed e-mails reflecting Axonn's litigation threats throughout negotiations, Orbit One's own deal counsel (a member of the law firm of Lowenstein Sandler PC ("Lowenstein")) admitted several times on deposition that he could see how

---

[2]     Deposition transcripts were attached as Exhibit 2 to the declaration of Dorothy N. Giobbe, accompanying Numerex's Summary Judgment Motion.

"Numerex would feel misled" because Plaintiffs did not disclose the correspondence and did not describe it in their APA disclosure schedule.  Pergola Dep. 194, 202.

Numerex relied on Plaintiffs' false and misleading representations and warranties in the APA.  Num. Motion at 12-13, 41-42.  After the acquisition, Numerex's Orbit One Satellite Division (the "Satellite Division") operated the business of Orbit One, with Ronsen in charge.  *See* Ex. A (Ronsen Dep. at 242); Ex. 1, Ronsen Severance and Non-Competition Agreement ("SNC"), § 1(a); Num. Motion at 23-24.

Under the terms of the APA, Numerex paid Orbit One $5.5 million in cash at closing.  Num. Motion at 13; Ex. 1, APA § 1.3(a).  The APA also provided for the possibility of an "Earn Out," which gave Orbit One the opportunity, post-acquisition, to earn additional cash and Numerex stock.  *Id.*; Ex. 1, APA Ex. B.  Earn Out payments, if any, were conditioned on the successful performance of the Satellite Division during the two-and-one-half years following the acquisition, as measured by Earn Out targets set forth in the APA.  *Id.*

Almost immediately following the acquisition, Axonn threatened litigation, alleging that Orbit One did not have a license to use its patented technology in its new product, that Orbit One had stolen trade secrets in order to "design around" other patents held by Axonn, and that litigation was imminent.  Num. Motion at 14; *see also* Exs. 42-44.  In addition, the recklessness of Plaintiffs' pre-acquisition forecasts bore itself out after closing; coupled with Axonn's renewed threats of litigation, the post-acquisition business performed abysmally during the latter half of 2007.  Num. Motion at 2, 14-16.  Against Plaintiffs' pre-acquisition 2007 sales projection of 7,300 SX-1 units, the Satellite Division sold a mere 12.  *Id.*

With the possibility of the Earn Out slipping through their fingers, Plaintiffs concocted a scheme to receive the Earn Out despite the performance of the post-acquisition business.  *Id.* at 10-11.  On October 5, 2007, a mere 60 days after the closing, Ronsen sent a letter to Numerex

senior management, blaming the poor performance of the Satellite Division on Numerex.  Ex. 63.  This letter, which was edited by an Orbit One advisor who is also a lawyer, launched a calculated campaign by Plaintiffs to falsely blame Numerex for the Satellite Division's failure. Num. Motion at 15-16; Ex. 131; Stoughton Dep. 8-9.  They did this in a blatant attempt to take advantage of a clause in Ronsen's Severance and Non-Competition Agreement, under which they hoped they would be able to receive the entire Earn Out (without actually having earned it). Their fraudulent plan was to concoct evidence that Ronsen had a "good reason" under his employment agreement to terminate his employment with Numerex.  Num. Motion at 15-16; Ex. 1, Ronsen SNC.

It was during this period that Ronsen and Orbit One, assisted by Rosenzweig and Naden, began to prepare for litigation and, at the same time, to destroy documents.

**B.     November to December 2007:  Plaintiffs Prepare for Litigation and Simultaneously Delete Electronic Documents from Numerex's Server**

On November 28, 2007, Ronsen initiated a meeting with his attorneys to discuss litigation against Numerex.  Ex. B.  Anthony O. Pergola, Plaintiffs' transaction counsel at the Lowenstein firm, set up a meeting between Ronsen and, among others, John J.D. McFerrin-Clancy, litigation counsel at the same firm.  *Id.*  McFerrin-Clancy is the attorney who filed Ronsen and Orbit One's lawsuit one month later.  Ex. 104.  The initial meeting between Ronsen and McFerrin-Clancy took place on December 6, 2007.  *See* Ex. B; Pergola Dep. 10; Ex. A (Ronsen Dep. 388).

During this period that Plaintiffs were contemplating litigation, in November 2007, Ronsen directed a subordinate, Christopher Dingman, the Satellite Division's IT System Administrator, to copy Ronsen's e-mail folder located on the Satellite Division's server onto an external hard drive that Ronsen personally owned.  Ex. C (Dingman Decl. ¶ 7); Ex. A (Ronsen Dep. 387, 393).  He also directed Dingman, with Rosenzweig's and Naden's approval, to create

CD-ROMs of their e-mail folders as well.  Ex. C (Dingman Decl. ¶ 8).  He told Dingman that he wanted these copies because of potential litigation with Axonn and for back-up purposes, and he promised Dingman that he had or would seek approval from senior Numerex management to remove pre-acquisition information from the server.  Ex. C (Dingman Decl. ¶¶ 7-9).  Ronsen never sought or received such approval—and certainly never received approval to remove either pre- or post-acquisition information concerning Satellite Division business.  Ex. C (Nicolaides Decl. ¶ 7).

Days after his December 6 meeting with litigation counsel to "discuss . . . options moving forward" (a discussion that led to the filing of a lawsuit one month later), Ronsen began to delete files from Numerex's shared drive and e-mail server, deleting at least several thousand e-mails.  Ex. D (Ronsen Decl. ¶ 22); Ex. A (Ronsen Dep. 387); Ex. C (Dingman Decl. ¶ 7); Ex. E (Ronsen's Resp. 1); Ex. F (Pls' Resp. 1).  Ronsen now claims that he "archived" those files, supposedly on Dingman's instruction.  *Id.*  However, Dingman only requested that Satellite Division employees remove *personal data* (such as digital photographs) stored on the shared drive and e-mail server and that they archive old e-mails to which they no longer needed access.  Ex. C (Dingman Decl. ¶¶ 5-6); Ex. D (Ronsen Decl. ¶ 26).  He *never* requested that they *delete* business-related data from the servers, which is what Ronsen did.  *Id.*  Neither Dingman—nor anyone at Numerex—was aware that Ronsen was deleting business-related data.  Ex. C (Dingman Decl. ¶¶ 6, 9).

In December 2007, Ronsen forwarded to McFerrin-Clancy correspondence between senior Numerex management and himself, in continued preparations for his lawsuit.  Ex. G.  On December 19, Ronsen hand-delivered to Numerex's CEO a letter from McFerrin-Clancy stating: "On December 31, 2007, this firm will sue Numerex . . . unless, prior to that date, you have agreed to [our] settlement terms."  Ex. H.

### C.   January to April 2008:  Ronsen and Orbit One Initiate Litigation and Continue to Surreptitiously Steal and Destroy Relevant Documents

Ronsen and Orbit One commenced litigation against Numerex on January 7, 2008, while Ronsen was still employed as the Satellite Division's President.  Ex. 104.[3]

On January 25, 2008, counsel for Numerex wrote to Lowenstein requesting that Orbit One and Ronsen put a litigation hold in place

> by not destroying, concealing or altering any paper or electronic files, other data generated by and/or stored on your clients' computer systems and storage media . . . or any other electronic data. . . .  This includes, but is not limited to:  email and other electronic communications; word processing documents, spreadsheets, databases, calendars, telephone logs. . . ; offline storage or information stored on removable media; information contained on laptops or other portable devices. . . .

> Your clients' duty to preserve data extends to any personal computers and computers owned or used in connection with Mr. Ronsen's other business ventures such as Bridger Fire, Inc. . . .

> Due to its format, electronic information is easily deleted, modified or corrupted. Accordingly, your clients must take every reasonable step to preserve this information until the final resolution of this matter. . . .

> Please forward a copy of this letter to all persons and entities with custodial responsibility for the items referred to in this letter.

Ex. I.  Despite this letter and despite their common law document preservation obligations, Orbit One and Ronsen carried out theft and destruction of documents during the period that followed.

---

[3]      On March 10, 2008, Numerex answered and asserted counterclaims.  Ex. 107.  On July 9, 2008, Numerex filed an action in this Court against Rosenzweig and Naden, which was consolidated with the first action on July 29. Docket No. 1 in Case No. 08 Civ. 06233 and Docket No. 17 in Case No. 08 Civ. 00905.  Rosenzweig and Naden filed counterclaims on February 4, 2009.  Docket No. 49 in Case No. 08 Civ. 06233.  On September 23, 2008, Plaintiffs filed a third action in the District of Montana, with a motion for preliminary injunction seeking to prevent Numerex from enforcing Ronsen's, Rosenzweig's and Naden's Severance and Non-Competition Agreements. Docket No. 1 in Case No. 08 Civ. 11195.  Following briefing on the issue, the Montana action was transferred to this Court on December 9.  *Id.*  The Court held a preliminary injunction hearing on Plaintiffs' pending motion on January 7, 2009, denying the motion on January 21.  Docket No. 3 in Case No. 08 Civ. 11195.  Numerex filed counterclaims on January 30, and this third action was consolidated with the first two on February 23, 2009.  Docket Nos. 5 and 7 in Case No. 08 Civ. 11195.

### 1. Numerex's Backup Tapes

Following Orbit One and Ronsen's filing of their lawsuit, Numerex initiated a litigation hold requiring employees to preserve all information in their possession relating to the dispute. Ex. C (Black Decl. ¶ 2). Numerex thus removed from rotation the backup tapes supporting the Satellite Division's servers in order to preserve the information on them. Ex. C (Dingman Decl. ¶ 11). These backup tapes recorded the previous twelve days' worth of information before automatically overwriting the information. Ex. C (Cowart Decl. ¶ 3). As such, the documents that Ronsen had deleted in December of 2007 were not preserved on these backup tapes. *See id.*

The backup tapes were placed in the Satellite Division's safe, the only completely secure, fireproof location in the Satellite Division, which was located in Ronsen's office. Ex. C (Dingman Decl. ¶ 11). Later that month, without Numerex's permission and without informing anyone, Ronsen removed the tapes from the safe and took them to his home. Ex. E (Ronsen's Resp. 4); Ex. F (Pls' Resp. 4). Much later, after Ronsen's conduct had been exposed in the course of discovery, Ronsen claimed that the safe was "too small" for both the tapes and the other materials stored in the safe—but he never mentioned this to anyone at Numerex at the time. *Id.*

### 2. Ronsen and Orbit One Use Subordinates to Gather Numerex Documents Pertaining to the Numerex-Orbit One Dispute

In January 2008, plaintiff Orbit One paid for a hard drive that Rosenzweig used to copy information from his Numerex e-mail account, his storage space on Numerex's server, and his laptop computer hard drive. Ex. F (Pls.' Resps. 1, 10); Ex. J (Rosenzweig's Resp. 2). After copying this information, without Numerex's knowledge, Rosenzweig took the hard drive with him. Ex. F (Pls.' Resp. 1).

Naden also copied and took with him, without Numerex's knowledge, electronic information stored on his Numerex laptop computer on January 10, January 31, April 11, and June 2, 2008.  Ex. K (Naden's Resps. 2, 4).

In February 2008, Ronsen instructed Byron Webb, the Satellite Division's Controller, to gather and forward to him all of the information in his e-mail folder relating to the preparation of the budget, sales forecasts, and other information, as well as e-mail correspondence between Webb and Numerex senior management, including Louis Fienberg and Alan Catherall.  Ex. C (Webb Decl. ¶ 5).  These e-mails were relevant to the dispute between Ronsen/Orbit One and Numerex.  Webb complied with his boss' instruction.  *Id.*

Ronsen also purchased a new laptop computer with plaintiff Orbit One's funds and instructed Webb to use the laptop to perform bookkeeping for Orbit One.  Ex. C (Webb Decl. ¶ 7).  Because Webb used the laptop in the Satellite Division office, as instructed by Ronsen, he was behind the computer firewall, resulting in his Numerex e-mail files automatically loading up to the new laptop.  *Id.*  After a few weeks, Webb informed Ronsen that he was uncomfortable with this arrangement in view of the fact that litigation was ongoing between Ronsen/Orbit One and Numerex.  Ex. C (Webb Decl. ¶ 8).  Ronsen took the laptop from Webb.  *Id.*

In March 2008, Ronsen instructed Stephen Black, Director of Satellite Division Operations, to create and give him a copy of his work e-mail folder.  Ex. C (Black Decl. ¶ 3).  Like Webb, Black complied with his boss' instruction.  *Id.*  Ronsen never informed Numerex that he collected e-mails relevant to the litigation from Rosenzweig, Naden, Webb, and Black, or that he had taken with him a laptop containing Webb's entire e-mail folder.

### 3.    Removal of Computers and Hard Drives and Deletion of Documents From Numerex Servers

Sometime after Ronsen and Orbit One initiated litigation in January, without the permission or knowledge of Numerex management, Ronsen removed from Numerex a laptop

computer that he had used for Satellite Division business.  Ex. A (Ronsen Dep. at 423).  He claimed it was a computer issued by the Federal Emergency Management Agency ("FEMA"), an end user of the Satellite Division's asset tracking products.  *Id.*  Ronsen has never returned that computer, nor has he explained its whereabouts.

 Ronsen also took with him a desktop computer that he had been using both pre- and post-acquisition in Satellite Division business and that Orbit One had sold to Numerex in the acquisition.  *Id.* at 409-12); *see* Ex. 1, APA § 1.1.  The computer contained Ronsen's e-mails and documents relevant to the business.  Ex. A (Ronsen Dep. 411-12, 415).  Ronsen later claimed that Dingman had backed up the contents of the desktop hard drive to a laptop computer Ronsen also used at the office.  *Id.* at 413-14.

 But literally hours before Ronsen resigned from Numerex on April 24, 2008—and again without the permission or knowledge of Numerex management—Ronsen swapped the hard drive in that laptop with a blank hard drive, and took the original hard drive with him.  *Id.* at 417-18; Ex. 110.  Ronsen then reconstructed the new laptop hard drive with selected e-mails, in an apparent attempt to cover his tracks.  *See* Ex. A (Ronsen Dep. at 418); *see* Ex. C (Dingman Decl. ¶ 12).  The new hard drive contained very little information.  Ex. A (Ronsen Dep. at 418).  Numerex did not discover this conduct for several months.  Once the truth came out, Ronsen swore that he had replaced the original laptop hard drive because it had become "corrupted" and because he wanted to ensure the proper preservation of his e-mails.  *Id.* at 416-417; Ex. D (Ronsen Decl. ¶ 41).

 During this period, Ronsen also deleted 2,089 documents from Numerex's servers.  Ex. E (Ronsen's Resp. 1); Declaration of Robert Bolstad dated March 5, 2010 ("Bolstad Decl.") ¶ 5; 114 examples of the documents Ronsen deleted are attached as Exhibit A to the Bolstad Declaration.  *Id.*  They include the following:

- An e-mail from Rosenzweig to Ronsen and Naden, dated July 30, 2007, stating:  "if we achieve 20% or 25% below <u>quarterly</u> targets for two consecutive quarters, NMRX can implement unilateral changes to the budget.  This will likely happen, at some point." (Ex. A to Bolstad Decl. (NUM00547825));

- Documents concerning Orbit One's relationship with Axonn, including a timeline of events (*e.g.*, *id.* (NUM00558874-883, NUM00559156-190, NUM00559932-933, NUM00554942-969);

- Documents concerning SX-1 marketing and communications with potential SX-1 customers (*id.* (NUM00546362, NUM00559622-627, NUM00559680-683, NUM00559678-679));

- Documents concerning Ronsen's October 5, 2007 letter to Numerex and other documents summarizing Ronsen's complaints (*e.g.*, *id.* (NUM00559876-886, NUM00545950-959, NUM00559589-593, NUM00559602)); and

- A document gathering a Satellite Division employee's complaints against Numerex in preparation for the instant lawsuit (*id.* (NUM00551607).

### 4.    Upon Resignation, Ronsen Claims to Have Turned Over All of Numerex Property

In his April 24, 2008 letter of resignation, Ronsen stated that he had handed over all

Numerex property to Stephen Black.  Ex. 110.  But he had not.  He had not returned the FEMA

laptop; he had not returned the desktop computer he had used for Satellite Division business; he

had not returned the laptop hard drive he had swapped out just days before he resigned; he had

not returned the information he took relating to Satellite Division business—as it turned out,

approximately 4.5 million pages of relevant data that Plaintiffs later produced to Numerex; and

he had not returned the backup tapes he had helped himself to in January of 2008.  Ex. A

(Ronsen Dep. at 371-72; 411-12, 417-18; 424-426); Ex. C (Black Decl. ¶ 4); *see* Ex. L at 1.[4]

---

[4]    Ronsen did not return the backup tapes until after he resigned from Numerex.  Ex. C (Black Decl. ¶ 4).

**D.      April 2008 and Beyond:  Post-Resignation Theft and Destruction Continues**

**1.      Destruction of Stolen Desktop Computer**

After he resigned, Ronsen's egregious conduct continued.  Again without telling

Numerex, Ronsen gave the desktop computer he had removed from the Satellite Division—the

non-corrupted copy of his e-mail and documents—to an outside individual named Trevor Lanice,

Ronsen's personal "IT guy," and ordered him to "cannibalize it" in order to build a new

computer.  Ex. A (Ronsen Dep. at 412, 427-28).  Ronsen knew the information on the desktop

would be destroyed by the "cannibalization."  *See id* at 427-28.  He also knew the information on

the desktop, supposedly backed up onto the now-"corrupted" laptop hard drive, was unique and

not otherwise available.  *See id.*  Yet he ordered the desktop computer destroyed.  *Id.*  In this

manner, the unique information on the desktop (and purportedly the laptop hard drive)

conveniently disappeared.

**2.      Destruction of E-mails Forwarded to Ronsen's Personal E-mail
         Account After His Resignation**

Shortly before leaving Numerex, Ronsen ordered his work e-mails to be automatically

forwarded to his personal "Yahoo" e-mail account.  Ex. A (Ronsen Dep. at 430).  After he

resigned, unbeknownst to Numerex management, Ronsen continued to receive these forwarded

e-mails—over 200 of them.  Ex. A (Ronsen Dep. at 430); Ex. C (Dingman Decl. ¶ 14); Ex. M;

Ex. N.  In fact, when the e-mails stopped forwarding to his Yahoo account after his resignation,

Ronsen contacted Dingman and instructed him to fix the problem so that he could continue to

receive the forwarded e-mails.  *Id.*  Ronsen failed to produce these e-mails in discovery, and has

admitted that he deleted all of them.  Ex. A (Ronsen Dep. 429-31); Ex. N.

**E.      Numerex Begins to Discover Plaintiffs' Document Destruction, and Files A
         Motion for Sanctions**

Ronsen and Orbit One made no disclosure of any kind to Numerex regarding their theft

and destruction of documents until August 2008.  On August 4, 2008, in response to inquiries

from Numerex, an associate at the Lowenstein firm disclosed that Ronsen had copied and then deleted electronically stored data from Numerex's servers in November or December of 2007 and again in April of 2008 shortly before terminating his employment. Ex. O. (Lowenstein soon thereafter removed the associate from this case.) The disclosure stated that Ronsen "removed from the Numerex exchange servers their Outlook files (*i.e.*, e-mails with attachments, contacts and calendar items) that they reasonably believed were privileged", but "cast[ing] their nets fairly broadly" resulted in collecting "documents that are not privileged." *Id.* at 2. Numerex immediately demanded the return of the stolen data. Ex. P. Ronsen and Orbit One agreed to return some information that they claimed constituted what was taken in April of 2008, but refused to return any other documents, including those they had admitted to taking in November or December of 2007. Ex. Q.

Numerex filed a motion with this Court on August 27, 2008, requesting an order requiring Ronsen to return to Numerex the documents that he had stolen, and also seeking sanctions. Ex. R. Numerex proffered evidence of what it was aware of at the time, which consisted primarily of the Lowenstein disclosure of August 4. Numerex was not then aware, however, of Ronsen's destruction of the missing desktop computer containing Satellite Division documents, his destruction of work e-mails forwarded to his personal Yahoo e-mail account, his theft of the "corrupted" hard drive, his theft of the second laptop, or his deletion of over 2,000 documents from Numerex's server.

Ronsen and Orbit One opposed Numerex's motion with a sworn statement by Ronsen claiming that he was entitled to take the documents because they were purportedly comprised of either pre-acquisition communications between Orbit One, or its principals, and Lowenstein that

they claimed were privileged, or e-mails unrelated to Satellite Division business.  Ex. D at ¶¶ 19, 29-30, 42.[5]

As is now clear from evidence that has emerged since the August 2008 motion was filed—specifically, Plaintiffs' subsequent production of approximately 4.5 million pages of non-privileged, relevant documents that they had taken from Numerex—these sworn statements were patently false.  Ex. L at 1.

In an October 31, 2008 Memorandum and Order, Magistrate Judge Francis addressed both an earlier motion by Numerex to enforce a subpoena and Numerex's motion for the return of stolen documents and for sanctions.  Ex. U.  With respect to the latter motion, Judge Francis ordered Orbit One and Ronsen to proceed with discovery and produce all non-privileged documents.  *Id.* at 26.  Concerning Numerex's sanctions request, Judge Francis relied on the sworn statements submitted by Ronsen:

- "According to Mr. Ronsen, he has 'not deleted or manipulated a single file'; '[e]ach and every file . . . has always been and continues to remain preserved, secure, and readily accessible.'"  *Id.* at 6 (quoting Ronsen Decl. ¶ 31).

- "[T]here has been no spoliation of evidence:  Mr. Ronsen attests that he did not destroy or alter the files he took and that the files are in Lowenstein's possession."  *Id.* at 24 (citing Ronsen Decl. ¶¶ 31-36).

- "As the documents have been preserved, Numerex will obtain all non-privileged documents in unaltered form."  *Id.* (citing Ronsen Decl. ¶ 31).

- "'[T]he vast majority' of files removed by Mr. Ronsen were either 'old, personal, and not related in any way to Numerex, the APA, or Orbit's business or operations' or protected by attorney-client privilege."  *Id.* at 24-25 (quoting Ronsen Decl. ¶¶ 29, 30).

- The files Ronsen copied from Numerex's servers in April 2008 "were never removed from Numerex," and those copied files had been returned to Numerex.  *Id.* at 5 n.4 (citing, *inter alia*, Ronsen Decl. ¶¶ 50-51).  The judge thus concluded that "any dispute regarding the files copied by Mr. Ronsen in April 2008 is moot."  *Id.*

---

[5] Ronsen and Orbit One's Memorandum of Law in Opposition to Numerex's Motion for Return of Stolen Documents and Sanctions is attached as Ex. S to the Kim Declaration.  Numerex's Reply Memorandum in Support of its Motion for Return of Stolen Documents and Sanctions is attached as Ex. T to the Kim Declaration.

Relying exclusively on Ronsen's sworn statements, Judge Francis declined to impose sanctions, but concluded that his

> determination is without prejudice to Numerex bringing a new motion for sanctions if further discovery shows that Mr. Ronsen in fact removed documents from Numerex that were neither privileged nor personal.  *Furthermore, if Numerex were to discover that Mr. Ronsen destroyed or altered the files he removed, it would be entitled to seek sanctions.*

Ex. U at 26 (emphasis supplied).  Indeed, the 4.5 million pages Ronsen and Orbit One produced in response to Judge Francis' order and subsequent discovery proves precisely what Judge Francis described would entitle Numerex to seek sanctions.

Ronsen "removed documents from Numerex that were neither privileged nor personal." *See id.*  In all, Ronsen removed hundreds of thousands of pages of sensitive Satellite Division business documents prior to leaving the company.  Ex. A (Ronsen Dep. 369-70); *see, e.g.*, Ex. V. The information he took was confidential and proprietary to Numerex, containing sensitive business information about Satellite Division business plans and customers.  Ex. V.[6]  Examples of these documents include the following:

- Satellite Division marketing and sales plans (Ronsen Dep. 372-74; Ex. W);

- SX-1 sales prospect lists (Ronsen Dep. 374-77; Ex. X);

- E-mails with the president of the Satellite Division's largest business prospect (Ronsen Dep. 377-78; Ex. Y);

- Numerex policies (Ronsen Dep. 380-81; Exs. Z, AA); and

- Satellite Division business plan presentations, reflecting its best sales prospects and leads as of March of 2008 (Ronsen Dep. 381-82; Ex. BB).

---

[6]     The APA provided that Numerex acquired "all computer software and hardware" (APA § 1.1(a)(i), "all . . . data bases" (*id.* § 1.1(a)(ii)), and "all information, files, records, data . . . contracts and recorded knowledge" (*id.* § 1.1(a)(x)), with specified exclusions.  Ex. 1.  Additionally, Numerex's employee handbook provides that "all messages and transmissions composed, sent, stored or received on Numerex's Electronic Information and Communication Systems are and remain the exclusive property of the company and are not to be considered private property of any associate."  Ex. 138 at 22.

107 examples of Numerex business documents that Ronsen took are attached as Exhibit V to the Kim Declaration.

Additionally, Ronsen "destroyed or altered the files he removed" from Numerex.  *See* Ex. S at 26.  As described above, Ronsen and Orbit One destroyed at least one desktop computer and hundreds of work e-mails Ronsen had forwarded to his personal e-mail account.  Ex. A (Ronsen Dep. at 412-13, 427-31); Ex. N.  After commencing the lawsuit, Ronsen also deleted over 2,000 documents from Numerex's servers.  *See* Bolstad Decl. ¶ 5; Ex. D (Ronsen Decl. ¶¶ 21-23); *see also* Ex. A (Ronsen Dep. 419).

It was only through facts that emerged after Numerex filed its August 2008 motion that Numerex learned the extent of Plaintiffs' theft and destruction of documents.  Accordingly, Numerex now seeks relief for Plaintiffs' spoliation.

## ARGUMENT

### I.      Numerex Is Entitled to An Adverse Inference

"It is a well-established and long-standing principle of law that a party's intentional destruction of evidence relevant to proof of an issue at trial can support an inference that the evidence would have been unfavorable to the party responsible for its destruction."  *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998).  An adverse inference is appropriate against a party who destroys evidence because it "will properly 'plac[e] the risk of an erroneous judgment on the party that wrongfully created the risk.'"  *Id.* (internal quotation marks, brackets, and citation omitted); *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999) ("spoliators should not benefit from their wrongdoing") (citation omitted).

A party seeking an adverse instruction must demonstrate "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed 'with a culpable state of mind'; and (3) that the destroyed evidence was

'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002) (quoting *Byrnie v. Town of Cromwell Bd. of Educ.*, 243 F.3d 93, 107-12 (2d Cir. 2001)).  Numerex satisfies all three of the foregoing elements.

### A.   Ronsen and Orbit One Willfully Destroyed Relevant Evidence While a Litigation Hold Was In Place

Ronsen and Orbit One engaged in the willful destruction of relevant evidence under their control after their duty to preserve evidence arose.  It is well settled that "the duty to preserve evidence arises when a party reasonably anticipates litigation." *Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Secs.*, LLC, No. 05 Civ. 9016(SAS), 2010 WL 184312, at *4 (S.D.N.Y. Jan. 15, 2010) (footnote omitted).  Indeed, "[a] plaintiff's duty is more often triggered before litigation commences, in large part because plaintiffs control the timing of litigation." *Id.* (footnote omitted).  Here, Plaintiffs' duty to preserve evidence arose at least on November 28, 2007, when Ronsen initiated a meeting with his attorneys to discuss litigation against Numerex.  *See* Ex. B.[7]

Ronsen and Orbit One engaged in the following willful destruction of relevant evidence after their duty to preserve arose:

- In December 2007, Ronsen copied and deleted from Numerex's servers confidential, proprietary Satellite Division documents.  Ex. D (Ronsen Decl. ¶ 22); Ex. A (Ronsen Dep. 387); Ex. C (Dingman Decl. ¶ 7); Ex. V).

- After the commencement of litigation, Ronsen took a laptop computer from the office (supposedly issued by FEMA).  He never returned the laptop computer to Numerex, and never explained where it is.  Ex. A (Ronsen Dep. at 423.)

- After the commencement of litigation in January of 2008, Ronsen took with him a desktop computer that he had been using both pre- and post-acquisition in Satellite

---

[7]   More probably, the duty to create a litigation hold went into place as early as October 5, 2007, when Plaintiffs sent a letter to Numerex management, blaming the poor performance of the Satellite Division on Numerex and implicitly threatening litigation.  Ex. 63.  Plaintiffs drafted this letter with the assistance of an Orbit One advisor who was also a lawyer.  Ex. 131; Stoughton Dep. 8-9.

Division business and that he had sold to Numerex in the acquisition. He instructed that the computer be destroyed. The computer contained a large quantity of documents relevant to the business. Ex. A (Ronsen Dep. 409-12, 415-416); Ex. 1, APA § 1.1.

- After the commencement of litigation and within 48 hours before Ronsen resigned from Numerex in April 2008, Ronsen swapped out the hard drive of his work laptop computer for a blank hard drive that he reconstructed with selected e-mails in order to cover his tracks. Ex. A (Ronsen Dep. 417-18); Ex. 110; Ex. C (Dingman Decl. ¶ 12). Ronsen stated that the original hard drive had been "corrupted." Ex. A (Ronsen Dep. 416).

- After the commencement of litigation and before his resignation, Ronsen deleted 2,089 documents from Numerex's servers. Bolstad Decl. ¶ 5. 114 examples of these deleted business documents are attached as Exhibit A to the Bolstad Declaration. *Id.*

- After the commencement of litigation and after his resignation, Ronsen, as he admitted in deposition, destroyed over 200 work e-mails that he had arranged to have automatically forwarded to his personal Yahoo account. Ex. A (Ronsen Dep. 429-31); Ex. N.

These acts constitute "the intentional destruction of relevant records, either paper or electronic, after the duty to preserve has attached" and thus willful spoliation. *See Pension Comm.*, 2010 WL 184312, at *3 (footnote omitted); *Byrnie*, 243 F.3d at 109 ("At no point has Cromwell asserted that their destruction was merely accidental. This is evidence of intentional destruction sufficient to show a culpable state of mind on Cromwell's part.").

### B.  Ronsen and Orbit One Acted With a Culpable State of Mind

In destroying documents relevant to this litigation while under a litigation hold, Ronsen and Orbit One acted in bad faith. Since at least November of 2007, Ronsen and Orbit One began to engage in a pattern of conduct pursuant to which—whenever and however they wanted—they gathered documents helpful to them in this litigation and directed their subordinates to do the same. Ex. F (Pls.' Resps. 1, 10); Ex. C (Dingman Decl. ¶¶ 7, 8, 11, 12, 14; Black Decl. ¶ 3). Then, despite his fiduciary duty to Numerex and despite his document preservation obligations, Ronsen took the documents with him, deleted documents off of Numerex's servers, and engaged in the outright destruction of many documents he had taken. Ex. A (Ronsen Dep. 412-13, 427-31); Ex. I; Ex. N; Ex. V; Bolstad Decl. ¶ 5. He never informed Numerex about any of this.

The initial facts concerning Ronsen's theft of Numerex documents did not begin to emerge until August of 2008—seven months after the commencement of litigation—when a junior member of Ronsen and Orbit One's litigation team disclosed this information to Numerex in response to Numerex's questions.  Ex. O.  But Numerex did not learn the extent of Ronsen and Orbit One's theft and destruction until discovery was nearly over.  Apart from his counsel's August 2008 disclosure, Ronsen never volunteered any information about his surreptitious conduct.  The truth came out piecemeal as Numerex, at great effort and expense, conducted detective work to piece together the story and then confronted Ronsen through its submissions and on deposition with evidence of his theft and destruction.  *See, e.g.*, Ex. A (Ronsen Dep. 409-12, 415; 427-31; 372-77, 380-82); Ex. F (Pls.' Resps. 1, 10).  Only then did Ronsen admit what he had done.  *Id.*  But instead of coming clean, the tales got taller:  he was "archiving" data; he was "preserving" Numerex documents; he was acting on the instructions of Christopher Dingman (a subordinate to Ronsen who never instructed Ronsen to delete Satellite Division business data); he took his laptop hard drive because it had "corrupted" two days before he resigned; and so on.

Ronsen deliberately hindered discovery through his theft and destruction of documents, through his persistent silence on what he had done, and through his subsequent dishonesty about what actually happened.  These obstructive acts support a finding that Ronsen's destruction of evidence was carried out in bad faith.  *See Residential Funding Corp.*, 306 F.3d at 110 ("so, too, can intentional or grossly negligent acts that hinder discovery support . . . an [adverse] inference, *even if* those acts are not ultimately responsible for the unavailability of the evidence (*i.e.*, even if those acts do not satisfy the 'culpable state of mind' factor because they did not cause the destruction or unavailability of the missing evidence)" (emphasis in original)).

Perhaps the most telling piece of evidence is Ronsen's October 3, 2008 declaration that he submitted to this Court in opposition to Numerex's August 2008 motion for sanctions.  Ex. D. Ronsen made misrepresentations in his sworn declaration, upon which the Court relied in declining to impose sanctions.  Ex. U.  The following chart reflects several statements that Ronsen made in his October 3 declaration that turned out to be untrue:

| Ronsen's Sworn Statements | The Truth |
|---|---|
| "At all times, I preserved all of the information that I archived, and I have not deleted or manipulated a single file."  Ex. D (Ronsen Decl. ¶ 31).<br><br>"Similarly, I preserved all of the e-mails that I archived in April 2008, and have not deleted or manipulated a single file."  Ex. D (Ronsen Decl. ¶ 50).<br><br>"Each and every file archived from the servers in accordance with Numerex's directive has always been and continues to remain preserved, secure, and readily accessible."  Ex. D (Ronsen Decl. ¶ 31).<br><br>"Each and every file that I archived in April 2008 has always been and continues to remain preserved, secure, and readily accessible on Numerex's servers."  Ex. D (Ronsen Decl. ¶ 51). | "**Q.** [D]id you have documents, either E-mail or Word documents or Excel spreadsheets or any other kind of documents used in the business of Orbit One on that desktop computer?<br>**Ronsen** Yes.<br>**Q.** And what did you do with those documents?<br>**Ronsen** They were destroyed.<br>**Q.** When?<br>**Ronsen** Sometime after I left Numerex . . . I donated the computer to my IT guy. . . .  I said can you cannibalize [it]. . . ."  Ex. A (Ronsen Dep. 411-12, 427); *see also id.* (Ronsen Dep. 413, 415-16).<br><br>"**Q.** [T]hese were E-mails that were sent to you from Numerex automatically after you resigned; correct?<br>**Ronsen** Yes.<br>**Q.** And do you still have a Yahoo account?<br>**Ronsen** I do.<br>**Q.** How come you didn't produce these documents in discovery?<br>**Ronsen** Because shortly after I received . . .  Shortly after I received these E-mails. . . I deleted all of the E-mails from my Yahoo account."  Ex. A (Ronsen Dep. 430-31); Ex. R.<br><br>"There were documents that were removed and/or copied from Numerex.  These documents were removed and/or copied on or about December 2007 and April 2008.  These documents were on a Numerex server, either on the "U" shared drive, or on the exchange server."  Ex. E (Ronsen's Resp. 1); *See* Ex. F (Pls' Resp. 1). |
| "Nor did I 'delete' any files from New Orbit's servers."  Ex. D (Ronsen Decl. ¶ 48). | "I compared the Ronsen backup data to the data retrieved from all available live Numerex data sources, including Numerex servers and computer hard drives.  I determined |

| | |
|---|---|
| | that there were approximately 2,089 unique relevant items among the Ronsen backup data that did not exist on the live Numerex data sources."  Bolstad Decl. ¶ 5.<br><br>"Mr. Ronsen reduced the amount of memory space he had been using by a few thousand emails."  Ex. C (Dingman Decl. ¶ 7). |
| "As with the files that I archived in December 2007, the files that I archived in April 2008 consisted exclusively of my e-mails and Outlook items (calendar, etc., but no documents) that I kept in the ordinary course of business on my company laptop."  Ex. D (Ronsen Decl. ¶ 49).<br><br>"I estimate that over eighty percent (80%) of that information was very old, personal, and not related in any way to Numerex, the APA, or Orbit's business or operations."  Ex. D (Ronsen Decl. ¶ 29). | "**Q.** Let's look at Exhibit 5 -- by the way you see how it has an Orbit Bates number on it, that is a document that you took with you when you left?<br>**Ronsen** It was a document that was copied and I had a copy of it.<br>**Q.** Now Exhibit 5 is the sales prospect list; right?<br>**Ronsen** That is correct. . . .<br>**Q.** Let's look at Exhibit 16 together, this is an E-mail from you to the president of GE Asset Intelligence, is that AI?<br>**Ronsen** That is correct. . . .<br>**Q.** The president of your largest prospect; right?<br>**Ronsen** That is correct.<br>**Q.** And that was Numerex property; right?<br>**Ronsen** That is correct.<br>**Q.** You took it with you; right?<br>**Ronsen** It was copied. . . .<br>**Q.** Numerex 20, Defendant's Exhibit 20, this is your business plan presentation; right?<br>**Ronsen** That is correct.<br>**Q.** It shows your sales prospects, your very best sales prospects as of March of 2008, correct; in fact it shows a great number of leads; is that right?<br>**Ronsen** It does show a great number of leads, yes.<br>**Q.** Numerex property; right?<br>**Ronsen** Yes. . . .<br>**Q.** You took it with you when you left; right?<br>**Ronsen** I took a copy with me when I left, yes."<br>Ex. A (Ronsen Dep. 374, 377-78, 381-82); *see also id.* (Ronsen Dep. 372-73, 381). |
| "Thus, there was nothing secret about my archiving of these files."  Ex. D (Ronsen Decl. ¶ 48). | "I understand that, while he was an employee of Numerex, Mr. Ronsen copied and removed information stored electronically on the Bozeman server, in his e-mail files, and on his laptop computer.  I also understand that Mr. Ronsen collected and removed copies of the e-mail files of other Numerex employees who were under his supervision.  Mr. Ronsen never obtained permission from me to take these actions, nor did he ever make me aware of his actions."  Ex. C (Nicolaides Decl. ¶ 7). |

Ronsen's patent misrepresentations to this Court in his sworn declaration reflects his bad faith and his culpable state of mind. *See Residential Funding Corp.*, 306 F.3d at 111 (finding adverse inference appropriate where "[t]he record also contains a number of at least careless, if not intentionally misleading, statements by RFC both to DeGeorge and to the District Court regarding the effort to retrieve the e-mails"); *Pension Comm.*, 2010 WL 184312, at *13 (stating that misleading declarations submitted in that case, "alone, would have supported a finding of bad faith," but finding only gross negligence because the declarants submitted amended declarations within a reasonable time).

It is clear that Ronsen's actions go far beyond mere gross negligence, which has been defined as a "failure to adhere to contemporary [document preservation] standards" after a discovery duty is established. *Id.* at *7. Examples of grossly negligent spoliation include: when the duty to preserve has attached, a failure to "identify all of the key players and to ensure that their electronic and paper records are preserved" and a failure "to cease the deletion of email." *Id.* Ronsen and Orbit One's conduct was much worse.

### C.    The Evidence Ronsen and Orbit One Destroyed Was Relevant to Numerex's Claims and Defenses

"Where a party destroys evidence in bad faith, that bad faith alone is sufficient circumstantial evidence from which a reasonable fact finder could conclude that the missing evidence was unfavorable to that party." *Residential Funding Corp.*, 306 F.3d at 109; *Kronisch*, 150 F.3d at 126. Likewise, gross negligence may also support a finding that the missing evidence was unfavorable to the spoliating party. *Residential Funding Corp.*, 306 F.3d at 109; *Reilly v. Natwest Mkts. Group, Inc.*, 181 F.3d 253, 268 (2d Cir. 1999) ("we hold that a finding of bad faith or intentional misconduct is not a *sine qua non* to sanctioning a spoliator with an adverse inference instruction," holding that grossly negligent conduct may also warrant such an instruction). "Accordingly, where a party seeking an adverse inference adduces evidence that its

opponent destroyed potential evidence . . . in bad faith or through gross negligence (satisfying the "culpable state of mind' factor), that same evidence of the opponent's state of mind will frequently also be sufficient to permit a jury to conclude that the missing evidence is favorable to the party (satisfying the 'relevance' factor)." *Residential Funding Corp.*, 306 F.3d at 109 (footnote omitted).

In view of the Second Circuit's foregoing pronouncements, a Judge of this Court recently applied a burden-shifting analysis to assess the relevance factor and prejudice to the innocent party. *See Pension Comm.*, at *5. The Court held that because relevance is difficult for an innocent party to demonstrate when the documents at issue no longer exist, when a spoliating party acts in bad faith or in a grossly negligent manner, relevance and prejudice may be presumed. *Id.*[8] The presumption of relevance and prejudice is rebuttable, however, if the spoliating party can demonstrate that the innocent party had access to the destroyed evidence or that the evidence provided no support for the innocent party's claims or defenses. *Id.* at *6.[9]

Here, as demonstrated above, Ronsen and Orbit One acted willfully and in bad faith by destroying documents that were subject to a litigation hold. By Ronsen's own admission, the evidence he destroyed contained confidential and proprietary Satellite Division documents and e-mails, and he destroyed them intentionally. Ex. A (Ronsen Dep. at 412-18, 427-31). It is impossible to know what was in many of the documents that Ronsen destroyed. Ronsen further claimed not to have deleted any documents from Numerex's servers, but it turns out that he deleted over 2,000 Numerex documents from its servers. Bolstad Decl. ¶ 5. Numerex has more

---

[8]     For negligent spoliation, a party must prove both relevance and prejudice. *Id.* at *5. However, "[c]ourts must take care not to hold[ ] the prejudiced party to too strict a standard of proof regarding the likely contents of the destroyed [or unavailable] evidence, because doing so 'would . . . allow parties who have . . . destroyed evidence profit from that destruction.'" *Id.* (citation omitted, bracketed text in original, footnote omitted).

[9]     If the spoliating party can demonstrate a lack of prejudice, lesser sanctions may be required, although no adverse inference is warranted. *Id.*

than "produced some evidence suggesting that a document or documents relevant to substantiating [its] claim would have been included among the destroyed files." *Kronisch*, 150 F.3d at 128. Under both Second Circuit precedent and *Pension Committee*'s burden-shifting analysis, Numerex is thus entitled to a presumption that the documents Ronsen and Orbit One destroyed were relevant to Numerex's claims and defenses and unfavorable to Ronsen and Orbit One. *See id.*; *Pension Committee*, 2010 WL 184312, at *5.

Accordingly, Numerex satisfies all three requirements for an adverse inference against Ronsen and Orbit One. *See Residential Funding Corp.*, 306 F.3d at 107; *Pension Comm.*, 2010 WL 184312, at *5.

### D.    Appropriate Inference for Plaintiffs' Willful Spoliation

Sanctions must be sufficient to "(1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore 'the prejudiced party to the same position [it] would have been in absent the wrongful destruction of evidence by the opposing party.'" *Goodyear Tire & Rubber Co.*, 167 F.3d at 779 (citation omitted).

### 1.    Requested Jury Charge

Numerex requests the following jury charge:

> You have heard testimony about records that have not been produced. Counsel for defendant Numerex has argued that this evidence was in plaintiffs Ronsen and Orbit One's control and would have proven facts material to the matter in controversy.
>
> If you find that Ronsen and Orbit One could have produced these records, and that the records were within their control, and that these records would have been material in deciding facts in dispute in this case, then you are permitted, but not required, to infer that this evidence would have been unfavorable to Ronsen and Orbit One.
>
> In deciding whether to draw this inference, you should consider whether the evidence not produced would merely have duplicated other evidence already before you. You may also consider whether Ronsen and Orbit One had a reason for not producing this evidence, which was explained to your satisfaction.

- 23 -

The Second Circuit found this exact language "fully warranted" in a case in which the spoliating party admitted to throwing out documents relevant to the plaintiff. *Zimmermann v. Associates First Capital Corp.*, 251 F.3d 376, 379, 383-84 (2d Cir. 2001).  Likewise, the *Pension Committee* Court imposed a similar type of adverse instruction, which it labeled a "spoliation charge," with respect to six of thirteen plaintiffs who had acted with gross negligence, despite the fact that—unlike here—the parties there did not "present any egregious examples of litigants purposefully destroying evidence." *Pension Comm.*, 2010 WL 184312, at *2, 6-7.[10]

### 2.   Other Possible Adverse Instructions

When, as here, a spoliating party has acted willfully or in bad faith, a court may instruct a jury that certain facts are deemed admitted and must be accepted as true. *Pension Comm.*, 2010 WL 184312, at *6; *see, e.g.*, *Goodyear Tire & Rubber Co.*, 167 F.3d at 780 (stating that, with respect to spoliated evidence consisting of a tire and a tire mounting machine and air compressor, "the trial judge could: (1) instruct the jury to presume that the exemplar tire was overinflated; (2) instruct the jury to presume that the tire mounting machine and air compressor malfunctioned. . . .") (footnote omitted)).  Alternatively, a court may impose a mandatory (but rebuttable) presumption for willful or reckless spoliation. *See, e.g., Knowlton v. Teltrust Phones, Inc.*, 189 F.3d 1177, 1182 (10th Cir. 1999) (approving the following instruction: "Teltrust Phones, Inc., has failed to give Pierre Knowlton evidence within its exclusive control that is relevant and material to the determination of whether [Teltrust Phones], Teltrust, Inc., and [TCSI] constituted a single employer.  Therefore, in determining whether the three entities were a single employer and whether to include all three entities' employees in your calculation [of the number of

---

[10]    The Court explained that a spoliation charge—which may also be imposed for merely negligent spoliation—permits a jury to presume that the lost evidence is both relevant and favorable to the innocent party. *Id.*  Any rebuttal evidence presented by the spoliating party would be considered by the jury, which would then determine whether an adverse inference was warranted. *Id.*

employees], you must presume that the evidence which Teltrust Phones, Inc. would not provide would have weighed against Teltrust Phones, Inc. and in favor of Pierre Knowlton.").

As demonstrated above, Ronsen has admitted to destroying at least one computer and thousands of relevant documents, and has thus acted willfully and in bad faith.  Ex. A (Ronsen Dep. 412-13, 427-31); Ex. N; Ex. L; *see also* Bolstad Decl. ¶ 5.  Thus, a mandatory adverse instruction is also proper.

## II.     Numerex Is Entitled to Other Sanctions As Well

Numerex is also entitled to attorneys' fees and the costs of bringing both the instant motion and its August 2008 motion for sanctions.  Such an award is "'appropriate to punish the offending party for its actions or to deter [the] litigant's conduct, sending the message that egregious conduct will not be tolerated.'"  *Doe v. Norwalk Cmty. College*, 248 F.R.D. 372, 381 (D. Conn. 2007) (citation omitted).  Additionally, "[a]warding monetary sanctions 'serves the remedial purpose of compensating [the movant] for the reasonable costs it incurred in bringing [a motion for sanctions].'"  *Pension Comm.*, 2010 WL 184312, at *7 (footnote omitted, brackets in original).  Thus in *Pension Committee*, the Court imposed monetary sanctions on thirteen spoliating plaintiffs, including those whose conduct was negligent.  *Id.*   The Court should impose no less here.  *See In re Am. Preferred Prescription, Inc.*, 14 Fed. Appx. 92 (2d Cir. 2001) (affirming district court's award of costs and attorneys' fees relating to the destruction of boxes of documents subject to discovery); *Residential Funding Corp.*, 306 F.3d at 112 (directing the district court on remand to consider, *inter alia*, whether an award of the costs of the innocent party's motion for sanctions and the appeal that followed was warranted).

The Court also has at its disposal a variety of harsher sanctions that it may deem appropriate.  "Trial judges should have the leeway to tailor sanctions to insure that spoliators do not benefit from their wrongdoing-a remedial purpose that is best adjusted according to the facts

and evidentiary posture of each case." *Reilly*, 181 F.3d at 267.  Other courts have imposed

sanctions of preclusion or termination (the entry of default judgment or dismissal) for the willful

destruction of relevant evidence.  *See, e.g.*, *Brown v. Coleman*, No. 07 Civ. 1345, 2009 WL

2877602, at *4 (S.D.N.Y. Sep. 8, 2009) (precluding certain testimony from being introduced at

trial); *Gutman v. Klein*, No. 03 Civ. 1570, 2008 WL 5084182 (E.D.N.Y. Dec. 2, 2008) (granting

a default judgment for defendants' intentional destruction of evidence).  A terminating sanction

"is justified in only the most egregious cases, such as . . . intentionally destroying evidence by

burning, shredding, or wiping out computer hard drives."  *Pension Comm.*, 2010 WL 184312, at

*6 (footnotes omitted).  Ronsen and Orbit One engaged in precisely that type of conduct.  It is

within the Court's discretion to grant such other sanctions as it sees fit.  *See Residential Funding*

*Corp.*, 306 F.3d at 113 ("[W]here, as here, the nature of the alleged breach of a discovery

obligation is the non-production of evidence, a District Court has broad discretion in fashioning

an appropriate sanction . . . .").

- 26 -

**CONCLUSION**

For all of the foregoing reasons, Numerex respectfully requests that the Court grant its motion for a jury instruction on the issue of spoliation of evidence and other relief. Specifically, Numerex requests that the Court provide an instruction at trial permitting the jury to draw an adverse inference from Ronsen and Orbit One's spoliation. Additionally, Numerex requests that the Court direct Plaintiffs to reimburse its attorneys' fees and costs associated with Orbit One and Ronsen's conduct in this regard (including those fees and costs incurred in bringing both the instant motion and its motion for sanctions, dated August 27, 2008). Numerex further requests any additional relief that the Court deems proper and just.

Dated: New York, New York
      March 8, 2010

Respectfully submitted,

ARNOLD & PORTER LLP

By: _____
Kent A. Yalowitz
    *Kent.Yalowitz@aporter.com*
Emily A. Kim

399 Park Avenue
New York, New York 10022-4690
Telephone:  (212) 715-1000
Facsimile:  (212) 715-1399

*Attorneys for Numerex Corp.*