UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
ORBIT ONE COMMUNICATIONS, INC., et ano.,

                    Plaintiffs/Counterclaim Defendants,

              -against-                                   08 Civ. 0905 (LAK)

NUMEREX CORP.,

                    Defendant/Counterclaim Plaintiff.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
NUMEREX CORP.,

                    Plaintiff/Counterclaim Defendant,

              -against-                                   08 Civ. 6233 (LAK)

SCOTT ROSENZWEIG, et al.,

                    Defendants/Counterclaim Plaintiffs.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
GARY NADEN, et al.

                    Plaintiffs/Counterclaim Defendants,

              -against-                               08 Civ. 11195 (LAK)

NUMEREX CORP.,

                    Defendant/Counterclaim Plaintiff.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OPINION**

2

Appearances:

John J. D. McFerrin-Clancy
Khizar Sheikh
LOWENSTEIN SANDLER, PC
*Attorneys for Orbit One, David Ronsen, & Lava Lake Technologies*

Howard J. Kaplan
Justin M. Sher
ARKIN KAPLAN RICE, LLP
*Attorneys for Gary Naden and Scott Rosenzweig*

Kent A. Yalowitz
Dorothy N. Giobbe
Emily A. Kim
ARNOLD & PORTER, LLP
*Attorneys for Numerex Corp.*

LEWIS A. KAPLAN, *District Judge.*

This case is an acrimonious dispute between David Ronsen, Scott Rosenzweig, and Gary Naden, shareholders and former executives of Orbit One Communications, Inc. ("Orbit"), on the one hand, and Numerex Corporation ("Numerex"), to which they sold their business, on the other. The parties have asserted an array of claims sounding in contract and tort in three consolidated actions. The matter is now before the Court on cross motions for summary judgment.

*Facts*

A.    *Background*

David Ronsen created Orbit in 2000.[1]   The company, located in Bozeman, Montana,

---

[1]    NMRX 56.1 St. [DI 181] ¶ 2.

manufactured satellite-based tracking devices and provided satellite communications services primarily to government agencies and contractors.[2]

In 2005, Ronsen hired Rosenzweig, a former corporate executive, to serve as Orbit's vice president of development.[3]  During the following year, he hired Naden, an engineer at Axonn, a Louisiana-based communications company and Orbit's principal supplier of satellite transmitters, to serve as chief technology officer.[4]  Rosenzweig and Naden became ten and six percent equity owners of Orbit, respectively, while Ronsen retained an eighty-four percent interest in the company.[5]

B.      The Acquisition and Asset Purchase Agreement

In late 2006, Numerex, an Atlanta-based corporation that provides cellular and satellite-based communications services, expressed interest in acquiring Orbit.[6]  Ronsen and Stratton Nicolaides, Numerex's chief executive officer, thereafter entered into negotiations that culminated in the execution by Orbit and Numerex of an asset purchase agreement (the "APA") on July 31, 2007.[7]

-----

[2]

     *Id.* ¶¶ 5-6.

[3]

     *Id.* ¶ 7.

[4]

     *Id.*   When Naden resigned from Axonn to work for Orbit, Axonn accused Naden of violating his non-competition covenant with Axonn and accused Orbit of violating Naden's non-solicitation agreement.  *Id.* ¶¶ 46-47.

[5]

     *Id.* ¶¶ 7-8.

[6]

     *Id.* ¶ 11.

[7]

     *Id.* ¶¶ 12, 19; NMRX Ex. 1, APA at 34.

The APA provided in substance that Numerex would acquire all of Orbit's assets. In exchange, Numerex agreed to pay $5.5 million into an escrow account at closing, with an additional $500,000 due sixty days later.[8]  The APA contained also an earn out provision under which Numerex agreed to pay Orbit additional compensation if Orbit met certain earnings and other targets.[9]

C.      *The Employment Agreements*

On the closing date, Ronsen, Rosenzweig, and Naden entered into employment agreements with Numerex pursuant to which they agreed to run the satellite division that formerly had been Orbit.  Ronsen became president, Rosenzweig vice president of business development, and Naden chief technology officer, respectively, of "NMRX's Orbit One division."[10]

The employment agreements contained non-competition covenants and severance provisions.  The former provided that Ronsen, Rosenzweig, and Naden, upon departure from Numerex, would not "directly or indirectly . . . own, manage, operate, control, be employed by, participate in, or be connected in any manner with the ownership, management, operation or control of any business in which [Numerex] . . . was engaged during the one year" preceding their resignation.[11]

---

[8]      NMRX Ex. 1, APA at § 1.3(a).

[9]      *Id.* § 1.3(a), Ex. B.

[10]      NMRX Ex. 1, APA Ex. D (employment agreements).

[11]      *Id.* at 73-74.

5

The duration of the non-competition covenants depended upon the reason for departure from Numerex.  In Ronsen's case, "termination by NMRX for cause" would trigger a non-competition period commencing upon departure and extending until the later of (1) the second anniversary of termination and (2) December 31, 2010.[12]  If, however, Ronsen left Numerex for "good reason," the non-competition period would be six months.[13]  Departure "other than for good reason" would trigger a non-competition period from termination until the later of (1) the first anniversary of his resignation and (2) December 31, 2010.  Ronsen's agreement defines "good reason" as (1) a "material breach by NMRX of any of its obligations" to Ronsen or (2) a "material reduction" of Ronsen's duties.[14]

In the cases of Rosenzweig and Naden, the non-competition period was two years if termination by Numerex was "for cause," six months if departure was for "good reason," and otherwise one year.[15]  Rosenzweig's and Naden's agreements defined good reason as a material breach by Numerex of its obligations under those agreements.[16]

---

[12]
      *Id.* at 72.

[13]
      *Id.* at 73.

[14]
      *Id.* at 72.

[15]
      *Id.* at 81-82, 90.

[16]
      *Id.* at 82, 90.

D.      *The Litigation*

In the months after the deal closed, the employment relationships of Ronsen, Rosenzweig and Naden with Numerex soured and litigation ensued.

1.      *Orbit One's and Ronsen's Action (08 Civ. 0905) – Action No. 1*

In January 2008, just five months after the closing, Orbit and Ronsen sued Numerex in Supreme Court, New York County, for breach of the APA, breach of Ronsen's employment agreement, unjust enrichment, and a declaration that Ronsen had "good reason" to resign from Numerex.  The complaint alleges that Numerex impermissibly reduced Ronsen's executive authority and thus prevented him from obtaining his full earn out compensation.[17]  Numerex removed the case to this Court and counterclaimed for breach of fiduciary duty, breach of contract, indemnification, and setoff.

2.      *Ronsen, Naden, and Rosenzweig Leave Numerex*

Ronsen resigned from Numerex in April 2008.[18]  Naden and Rosenzweig followed in June 2008.[19]  The parties dispute whether they left for "good reason" pursuant to their employment agreements.

---

[17]      Cpt. ¶¶ 85, 93, 98-99, 105-06.

[18]      Orbit 56.1 St. [DI 159] ¶ 166.

[19]      *Id.* ¶ 172.

　　　　　*3.　　　Numerex's New York Action (08 Civ. 6233) – Action No. 2*

In the wake of the resignations, Numerex sued Rosenzweig and Naden in this Court. The complaint alleges that the defendants breached their employment agreements and their fiduciary duties to Numerex by, among other things, stealing Numerex proprietary information upon their departure from the company.[20]　Numerex seeks also a declaration that Rosenzweig and Naden were terminated "for cause" pursuant to their employment agreements.　The defendants counterclaimed for breach of the APA and their employment agreements and tortious interference with prospective economic advantage.

　　　　　*4.　　　Naden's, Ronsen's, and Rosenzweig's Montana Action (08 Civ. 11195) – Action No. 3*

In July 2008, Naden, Ronsen, and Rosenzweig brought an action against Numerex in the District of Montana.　The complaint alleges that their covenants not to complete are overly broad and therefore unenforceable.　Numerex counterclaimed for fraudulent inducement, breach of the APA, breach of fiduciary duty, set off, violation of the Computer Fraud and Abuse Act (the "CFAA"),[21] misappropriation of confidential information, and conversion.　It asserts that Ronsen, Rosenzweig, and Naden failed to disclose all information material to its decision to enter into the APA and breached their contractual representations and warranties.　The action was transferred to this Court on Numerex's motion.

---

[20]

　　　　　*See, e.g.*, Ans. & Counterclaim [DI 5] ¶¶ 181-96.

[21]

　　　　　18 U.S.C. § 1030.

In January 2009, Naden, Ronsen, and Rosenzweig moved for a preliminary injunction barring Numerex from enforcing their noncompetition covenants. The Court, however, denied the motion because they failed to demonstrate the requisite threat of irreparable harm.[22]

     5.     *The Summary Judgment Motions*

Numerex moves for summary judgment dismissing Orbit's and Ronsen's complaint in Action No. 1 and Rosenzweig's and Naden's counterclaims in Action No. 2. It argues, among other things, that it did not breach its contractual obligations to Orbit and Ronsen, that Rosenzweig and Naden lack standing to assert a claim for breach of the APA, and that Rosenzweig and Naden in any case have not adduced evidence sufficient to raise a genuine issue of fact material to the tortious interference claim.

Numerex moves also for summary judgment on its fraudulent inducement, contract, and breach of fiduciary duty counterclaims in Action No. 3. It contends that Orbit committed fraud and breached its representations and warranties in the APA as matter of law by refusing to disclose all information material to Numerex's decision to enter into the APA.

Ronsen, Naden, and Rosenzweig cross move for summary judgment dismissing Numerex's counterclaims in Action No. 3. They maintain that they disclosed to Numerex all material information and, in any event, that Numerex has failed to adduce evidence sufficient to raise genuine issues of fact material to each of its claims. In addition, Rosenzweig and Naden move for partial summary judgment dismissing Numerex's claim in Action No. 2 for a declaration that

---

[22]

     *See Naden v. Numerex Corp.*, 593 F. Supp. 2d 675, 681 (S.D.N.Y. 2009).

they were terminated "for cause."  They seek also attorneys' fees and costs pursuant to Federal Rule of Civil Procedure 37.

### Discussion

### I.     The Summary Judgment Standard

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[23]  Where the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim.[24]  In that event, the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment.[25]

### II.    Orbit One and Ronsen's Claims Against Numerex – Action No. 1

### A.     Breach of the APA

Orbit and Ronsen claim that Numerex breached the APA by (1) "failing to operate New Orbit . . . in conformity with the [APA] Business Plan" and (2) "failing to provide marketing,

---

[23]
    *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *White v. ABCO Eng'g Corp.*, 221 F.3d 293, 300 (2d Cir. 2000); *see also* FED. R. CIV. P. 56(c).

[24]
    *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Virgin At. Airways Ltd. v. British Airways PLC*, 257 F.3d 256, 273 (2d Cir. 2001).

[25]
    *See, e.g.*, *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 269 F.3d 114, 123-24 (2d Cir. 2001); *Raskin v. Wyatt Co.*, 125 F.3d 55, 65-66 (2d Cir. 1997).

sales, human resources, IT, accounting and other support by the APA to New Orbit."[26]  Numerex moves for summary judgment dismissing that claim on the ground that the APA "provides no 'promise' of corporate support."[27]

Ronsen testified that Numerex's obligation to provide corporate support is derived from Section 2.2 of APA Exhibit B, which is entitled "Earn Out."  That section, however, merely sets forth the "rules [that] will apply when calculating the Satellite Division's Revenues and EBITDA for the purposes of calculation [of] the Earn Out."[28]  It contains no requirement that Numerex provide Orbit marketing, sales, human resources, IT, accounting, or other corporate support.  Ronsen in fact admitted that he "[did] not believe that in the APA there is specific language about sales support or marketing support."[29]

Orbit and Ronsen rejoin that Numerex nevertheless understood that their "primary reason for entering into the transaction was to obtain sales and marketing support from Numerex."  They assert also that the parties "expressly agreed" to inflated earn out targets representing "an amount paid by the satellite business in exchange for services" that Numerex would provide to Orbit.[30]  They rely on the testimony of their financial advisor, Thomas Stoughton, who stated that

---

[26]

Cpt. ¶ 93.

[27]

NMRX Mem. at 22.

[28]

*See* APA § 2.2 Ex. B.

[29]

NMRX Ex. 2, Ronsen Dep. 98:5-101:5, 194:18-21.

[30]

Orbit Opp. Mem. at 34.

it was "[his] understanding that the earn-out reflects the obligation of Numerex to provide support to the satellite business."[31] Staughton, however, later conceded that Section 2.2 did not require Numerex to provide sales or marketing support and "refer[red] only to the cost of [providing support] if they do so."[32]

Staughton's testimony is immaterial,[33] not least because the APA contains an express integration clause, which states that it "sets forth the entire understanding of the Parties hereto with respect to the Transactions contemplated hereby . . . . Any and all previous agreements and understandings between or among the Parties regarding the subject matter hereof, whether written or oral, are superseded by this Agreement."[34]  Orbit and Ronsen therefore may not offer extrinsic evidence of contractual intent or purpose to "vary the plain meaning" of the APA,[35] which does not require that Numerex provide corporate support.

In consequence, so much of the contract claim asserted by Orbit and Ronsen in

---

[31]

Orbit Ex. 150, Staughton Dep. 249:15-250:9.

[32]

*Id.* at 250:10-251:2.

[33]

Staughton's subjective understanding of the APA would be inadmissible in any event.  *See, e.g.*, *LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 208 (2d Cir. 2005); *Compania Embotelladora Del Pacifico, S.A. v. Pepsi Cola Co.*, 650 F. Supp. 2d 314, 323 (S.D.N.Y. 2009).

[34]

NMRX Ex. 1, APA § 9.3.

[35]

*Investors Ins. Co. of Am. v. Dorinco Reinsurance Co.*, 917 F.2d 100, 104 (2d Cir. 1990) ("This conclusion is particularly appropriate given the Agreement's 'integration clause,' which provides that the Agreement represents the entire understanding of the parties to the transaction.").

Action No. 1 as seeks to recover for lack of corporate support is dismissed.


      B.      *Breach of Ronsen's Employment Agreement and Declaration that Ronsen Had "Good Reason" to Resign*

      Ronsen's employment agreement provides that "Ronsen shall serve on a full-time basis as President of NMRX's Orbit One division (the 'Division'), with such powers and responsibilities customarily incident to such position and will diligently and competently perform such reasonable duties in connection with the Division's business as may be assigned to him by NMRX's Chief Executive Officer."[36]  It provides also that Ronsen may resign for "good reason" in the event of "(I) a material breach by NMRX of any of its obligations to Mr. Ronsen under this agreement, which breach is not cured in all material respects . . . ; or (ii) a material reduction of Mr. Ronsen's duties, authority or responsibilities such that (regardless of title) he no longer has the customary duties and authority of the president of the Division."[37]  Orbit and Ronsen seek a declaration that Ronsen had "good reason" to resign on the grounds that Ronsen was given neither the title nor the "substantive role [and] authority" of president of the Orbit division of Numerex and that Numerex "materially reduced" his duties.

      Numerex moves for summary judgment dismissing Orbit's and Ronsen's claims.  It argues that it satisfied its contractual obligations to Ronsen as a matter of law because it gave Ronsen full authority to run the Orbit One division, including the power to hire and fire employees,

---

[36]      Def. Ex. 1, APA Ex. D, Ronsen employment agreement § 1(a).

[37]      *Id.* § 3(a).

set employee bonuses, and settle legal disputes.  It therefore contends that Ronsen lacked "good reason" to resign from Numerex.  Orbit and Ronsen, however, rejoin that Ronsen was restricted in his ability to spend the budget, negotiate contracts, and hire his own staff.

There are genuine issues of fact as to whether Numerex breached Ronsen's employment agreement and whether Ronsen resigned for "good reason."  Orbit and Ronsen have adduced evidence sufficient for a rational trier of fact to conclude that Numerex did not grant Ronsen all powers "customarily incident" to his position.  Summary judgment dismissing their contract and declaratory judgement claims therefore would be inappropriate.

C.    *Unjust Enrichment*

The complaint alleges that Numerex "has acted to frustrate the [APA] and to deprive Plaintiffs of the benefit of their bargain – such that Numerex will have obtained the Orbit assets for little over the nominal up front payment, while preventing Plaintiffs from obtaining the full earn out compensation."[38]  Orbit and Ronsen seek $20 million of "earn out monies" that Numerex allegedly retained pursuant to the APA.  Numerex moves for summary judgment dismissing the claim.

"The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter."[39]  An unjust enrichment claim therefore does not lie where a valid contract covers

---

[38]    Cpt. ¶ 99.

[39]    *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 388, 521 N.Y.S.2d 653 (1987) ("A 'quasi contract' only applies in the absence of an express agreement, and is not really a contract at all, but rather a legal obligation imposed in order to prevent a party's

14

the subject matter that gives rise to the alleged enrichment.  Here the APA governs Numerex's acquisition of Orbit's assets and its obligations with respect to payment of any earn out.  The claim for unjust enrichment therefore must be dismissed.

> D.   *Breach of the Implied Covenant of Good Faith and Fair Dealing*

Orbit and Ronsen claim that Numerex breached the implied covenant of good faith and fair dealing by "act[ing] to thwart Plaintiffs from reaching the [APA's] earn out targets."[40] Numerex moves to dismiss that claim as duplicative of their claim for breach of contract.

"New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based on the same facts, is also pled."[41]  Here, Orbit and Ronsen have brought claims for both breach of contract and breach of the implied covenant of good faith and fair dealing on the ground that "Numerex breached its obligations to make Ronsen president and to allow him the authority to spend his budget to meet the earnout targets."[42]  The claims thus rest on the same factual assertions.[43]  Orbit's and Ronsen's

---

unjust enrichment.").

[40]     Cpt. ¶ 105.

[41]     *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002).

[42]     Orbit Opp. Mem. at 35.

[43]     In *A. Broad Inc. v. Worldwide Dreams, L.L.C.*, 2004 N.Y. Slip Op. 50733(U), at *2, 791 N.Y.S.2d 867 (Sup. Ct. 2004), on which, curiously, Orbit and Ronsen rely, the plaintiffs asserted a claim for breach of the implied covenant of good faith and fair dealing on the ground that defendants allegedly "materially reduced and/or changed the individual plaintiffs' employment duties."  The court, however, dismissed that claim in part as

claim for breach of the implied covenant of good faith and fair dealing therefore is dismissed.

III.      *Numerex's Claims Against Rosenzweig and Naden – Action No. 2*

      A.      *Declaratory Judgment Concerning the Non-Competition Covenants*

      Naden and Rosenzweig are subject to a two-year non-competition period only in the event of "termination by NMRX for Cause." The employment agreements define "cause" as, among other things, a material breach of the employee's contractual obligations to Numerex. Numerex's amended complaint seeks a declaration that Naden's and Rosenzweig's non-competition covenants were "enforceable and of a two-year duration due to the circumstances of the[ir] resignations."[44] Naden and Rosenzweig move for partial summary judgment dismissing that claim. They contend that the Court should apply the law of the case doctrine to "uphold [what they call its] previous decision that Rosenzweig and Naden were subject to a one year period of non-competition."[45] They contend also that Numerex's counsel conceded during the preliminary injunction hearing that a one-year period applied and that the concession constituted a "judicial admission to which Numerex is bound." Finally, they assert that Numerex in any event has failed to raise a genuine issue of material fact because they concededly resigned and thus never were terminated by Numerex.

      Numerex rejoins that the law of the case doctrine is inapplicable and that Numerex's counsel never made such a concession. Further, it maintains that Naden and Rosenzweig are bound

---

[44]  "duplicative of the same claim made in [plaintiffs'] breach of contract cause of action." *Id.* Amend. Cpt. [DI 47] at 90.

[45]  Def. Mem. at 6.

by a two-year noncompetition period because they resigned to "avoid imminent discharge."  It contends that, "[h]ad Numerex been aware of their various [fiduciary] breaches, it could have terminated them for cause."[46]

The contention that the law of the case doctrine applies here is baseless.  The Court never has "held" or "decided" that Naden and Rosenzweig are bound by a non-competition period no longer than one year.  Nor did Numerex stipulate to the length of the non-competition period during the preliminary injunction hearing.

On the other hand, Numerex's imminent discharge theory is unpersuasive.  As an initial matter, it does not dispute that Rosenzweig and Naden resigned from Numerex.  In addition, it has cited no persuasive authority in support of its contention that their resignation should be treated as a discharge under the noncompetition provisions.  In each case upon which Numerex relies, the court found that the employer threatened or intended to fire the employee before he or she resigned.[47]  Here, however, Numerex has adduced no evidence that it intended to fire Rosenzweig

---

[46]

NMRX Opp. Mem. at 33.

[47]

*See White v. Div. of Employment Sec.*, 416 N.E.2d 962, 963 (Mass. 1981) ("The claimant testified that he accepted the early retirement offer because '[he] could see that [he] would be laid off.' He knew that there would be layoffs based on seniority."); *Penn. Liquor Control Bd. v. Unemployment Compensation Bd. of Rev.*, 648 A.2d 124, 127 (Pa. Commw. Ct. 1994) (finding that the employee resigned to avoid imminent discharge after employer's "numerous warnings, reprimand and suspensions for the excessive absences" and admonishment that "any future failure of competent performance or misconduct in the area of [her] dependability will result in [her] removal."); *Green v. D.C. Dep't of Employment Servs.*, 499 A.2d 870, 877 (D.C. 1985) ("[D]uring the 5 months prior to his resignation petitioner had been admonished four times for absenteeism, tardiness, and leaving work without authorization" and warned that "[i]f this happens again termination will be recommended.").  Numerex relies also on *Bragg v. Navistar International Transportation Corp.*, 164 F.3d 373 (7th Cir. 1998), in which the plaintiff employee was "officially dismissed" by her employer.

and Naden before they departed from the company or that they resigned to avoid imminent discharge.  In consequence, Numerex is not entitled a declaration that Rosenzweig and Naden were terminated "for cause" pursuant to the employment agreements.

> B.     *Attorneys' Fees and Costs*

Naden and Rosenzweig seek attorneys' fees and costs pursuant Federal Rule of Civil Procedure 37 based on "Numerex's refusal to admit [pursuant to Fed. R. Civ. P. 36] that the applicable period of non-competition is no greater than one year."[48]

Rule 37 provides that "[i]f any party fails to admit what is requested [in a request for admission] and if the requesting party later proves . . . the matter true, the requesting party may move that the party who failed to admit pay the reasonable expenses, including attorney's fees, incurred in making that proof."  The court "must so order" unless, *inter alia*, "the party failing to admit had a reasonable ground to believe that it might prevail on the matter."[49]

Naden and Rosenzweig maintain that "Numerex cannot claim that it had a reasonable ground to believe that [the non-competition period is no longer than one year], since the Court has already held otherwise in its Preliminary Injunction Order."[50] Their argument, however, is baseless because the Court has not so held.  In consequence, so much of Naden's and Rosenzweig's motion as seeks to recover attorneys' fees and costs pursuant to Rule 37 is denied.

---

[48]    Def. Mem. at 6.

[49]    FED. R. CIV. P. 37(c)(2).

[50]    Def. Mem. at 11.

*IV.*     *The Rosenzweig and Naden Counterclaims – Action No. 2*

    *A.*     *Breach of Contract*

Rosenzweig and Naden counterclaim against Numerex for breach of contract, primarily on the theory that Numerex refused to pay them a six-month severance fee and withheld health care benefits to which they claim they were entitled under their employment agreements if they resigned for "good reason." They claim also that Numerex breached the APA by "withholding payments to Orbit One" and "imped[ing] the functioning of Orbit LLC."[51]

Numerex moves for summary judgment dismissing the contract counterclaims on the ground that Rosenzweig and Naden, as minority shareholders of Orbit and nonsignatories to the APA, lack standing to sue for breach of that agreement. It argues in the alternative that it satisfied its obligations to Rosenzweig and Naden under the employment agreements as a matter of law because they did not resign for "good reason."[52]

As a general matter, a third party may sue for breach of a contract made for his or her benefit. "However, an intent to benefit the third party must be shown and, absent such intent, the third party is merely an incidental beneficiary with no right to enforce the particular contracts."[53] Here the express terms of the APA demonstrate that the parties intended to confer third-party beneficiary status upon their shareholders. In a section entitled "Benefit to Others," the APA

---

[51]
    Def. Ans. [DI 49] at ¶¶ 38, 47.

[52]
    *See* NMRX Mem. at 46-47.

[53]
    *Port Chester Elec. Constr. Corp. v. Atlas*, 40 N.Y.2d 652, 655, 389 N.Y.S.2d 327, 330 (1976) (internal citations omitted).

19

provides, in pertinent part, that "[t]he representations, warranties, covenants and agreements contained in this Agreement are for the sole benefit of the Parties hereto, and their shareholders."[54] As Orbit's minority shareholders, Ronsen and Naden are intended third-party beneficiaries of the APA.

In addition, the APA states that "[a]ll Exhibits and Schedules referred to herein are intended to be and hereby are specifically made a part of this Agreement."[55]   Here, Naden and Rosenzweig may bring a contract claim pursuant to the APA because their employment agreements are attached to the APA as Exhibit D.   Further, the Court concludes that Numerex has not demonstrated the absence of a genuine issue of material fact as to whether Naden and Rosenzweig resigned "other than for good reason."[56]   Summary judgment dismissing the contract counterclaims therefore would be inappropriate.

### B.    Tortious Interference with Prospective Economic Advantage

Naden and Rosenzweig claim that Numerex "acted intentionally and willfully to cause damage to [their] careers and to interfere with their [prospective] business opportunities and

---

[54]
     NMRX Ex. 1, APA § 9.8.

[55]
     *Id.* § 9.10.

[56]
     Thus summary judgment dismissing Naden's and Rosenzweig's counterclaim for a declaratory judgment that they resigned from Numerex for "good reason" also would be inappropriate.

business relationships."[57]   Numerex moves for summary judgment dismissing the claim.

To prevail on a claim for tortious interference with prospective economic advantage, a plaintiff must demonstrate (1) a prospective contractual relation or business with a third party, (2) the defendant's interference with that relation, (3) that the defendant acted with the sole purpose of harming plaintiff or used dishonest, unfair, or improper means, and (4) injury to the plaintiff.[58] "[U]nwarranted litigation brought in bad faith with no belief in its merit constitutes 'improper means.'"[59]   Naden and Rosenzweig assert that Numerex brought such "unwarranted litigation in bad faith" by "alleging that [they] are subject to a two-year period of non-competition and then re-asserting this position even after it was clear that this position had no evidentiary support and after it had been rejected by the Court."[60]

Naden and Rosenzweig have not adduced any evidence that Numerex pursued unwarranted litigation in bad faith with no belief in its merit.   As discussed, the Court did not hold and Numerex did not admit that they were subject to a one-year non-competition period.   In addition, there remains a material issue of fact as to whether they departed "other than for good reason."   In consequence, their tortious interference counterclaim is dismissed.

----

[57]

Ans. & Counterclaim ¶ 97.

[58]

*G.I. Holdings, Inc. v. Baron & Budd*, 179 F. Supp. 2d 233, 253-54 (S.D.N.Y. 2001).

[59]

*Missigman v. USI Ne., Inc.*, 131 F. Supp. 2d 495, 515 (S.D.N.Y. 2001) (citing *Universal City Studios, Inc. v. Nintendo Co.*, 797 F.2d 70, 75 (2d Cir. 1986)); *see also Universal City Studios*, 797 F.2d at 75 ("[A] lawsuit . . . is wrongful 'if the actor has no belief in the merit of the litigation.'") (citation omitted).

[60]

Orbit Opp. Mem. at 48.

V.    *Numerex's Counterclaims Against Ronsen, Rosenzweig, and Naden – Action No. 3*

     A.    *Violation of the Computer Fraud and Abuse Act*

        Numerex counterclaims against Ronsen, Rosenzweig, and Naden for violation of the CFAA.  That statute provides a federal cause of action against a person who (1) "knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value"[61] or (2) "intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage."[62]  Numerex asserts that Ronsen, Rosenzweig, and Naden, in violation of the CFAA, "intentionally accessed Numerex's computer system and downloaded confidential and proprietary information contained on that system, and removed that information . . . for the purpose of competing with Numerex."[63]

        Ronsen, Rosenzweig, and Naden move for summary judgment dismissing the claim. They contend that Numerex has not raised a genuine issue of fact as to whether they accessed any Numerex computer "without authorization" because it "failed to allege, nor could it, that plaintiffs did not have authority to access the information."  They thus maintain that an action under the CFAA does not lie where, as here, employees access their employer's information "in the ordinary

---

[61]    18 U.S.C. § 1030(a)(4).

[62]    *Id.* § 1030(a)(5)(A)(ii).

[63]    Ans. & Counterclaim [DI 5] at ¶¶ 181-82.

course of their duties."[64]

        Courts have interpreted the CFAA's prohibitions of "access without authorization" and "exceed[ing] authorized access" in two different ways. At least two Circuits and one district court in our Circuit have applied agency law principles to the CFAA and held that an employee who misappropriates data residing on his employer's computer system or accesses it for an improper purpose violates the statute.[65] But other courts, including at least one district court in our Circuit, have disagreed, holding that the CFAA's prohibition of improper "access" does not encompass an employee's misuse or misappropriation of information that the employee lawfully accessed.[66] The Second Circuit has not addressed the issue squarely.

        The plain language of the CFAA supports a narrow reading. The CFAA expressly prohibits improper "access" of computer information. It does not prohibit misuse or misappropriation. Although the statute does not define "access without authorization," it provides that the phrase "exceeds authorized access" means "to access a computer with authorization and to

---

[64]
      Orbit Mem. at 38.

[65]
      *See, e.g.*, *Int'l Airport Ctrs., LLC v. Citrin*, 440 F.3d 418, 40-21 (7th Cir. 2006) ("[The employee's] breach of his duty of loyalty terminated his agency relationship (more precisely, terminated any rights he might have claimed as [his employer's] agent – he could not by unilaterally terminating any duties he owed his principal gain an advantage!) and with it his authority to access the laptop, because the only basis of his authority had been that relationship."); *EF Cultural Travel BV v. Explorica, Inc.*, 274 F.3d 577, 582-84 (1st Cir. 2001); *Caylon v. Mizuho Sec. USA, Inc.*, 07 Civ. 2441 (RO), 2007 WL 2618658, at *1 (S.D.N.Y. July 24, 2007).

[66]
      *See, e.g.*, *Jet One Group v. Halcyon Jet Holdings, Inc.*, No. 08 Civ. 3980 (JS), 2009 WL 2524864, at **5-7 (E.D.N.Y. Aug. 14, 2009); *Black & Decker (US), Inc. v. Smith*, 568 F. Supp. 2d 929, 933 (W.D. Tenn. 2008); *Shamrock Foods Co. v. Gast*, 535 F. Supp. 2d 962, 965 (D. Ariz. 2008).

use such access to obtain or alter information in the computer that the accesser is not entitled to obtain or alter."[67]  Thus, reading the phrases "access without authorization" and "exceeds authorized access" to encompass an employee's misuse or misappropriation of information to which the employee freely was given access and which the employee lawfully obtained would depart from the plain meaning of the statute.

Moreover, the statute as a whole indicates Congress's intent to prohibit access of a computer without authorization, not an employee's misuse of information that he or she was entitled to access or obtain.[68]  For example, the statute defines "damage" as "any impairment to the integrity or availability of data, a program, a system, or information."[69]  Further, the statute defines "loss" as "a reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service."[70]  The damages definitions are consistent with the CFAA's prohibition of computer hacking, which compromises the integrity and availability of data and may cause an

---

[67]

18 U.S.C. § 1030(e)(6); *see Diamond Power Intern., Inc. v. Davison*, 540 F. Supp. 2d 1322, 1342 (N.D. Ga. 2007) ("Section 1030(e)(6) contemplates that an "exceeds authorized access" violation occurs where the defendant first has initial "authorization" to access the computer.  But, once the computer is permissibly accessed, the use of that access is improper because the defendant accesses information to which he is not entitled.").

[68]

Courts have noted also that the legislative history of the CFAA further supports this view. *See Shamrock Foods*, 535 F. Supp 2d at 965.

[69]

18 U.S.C. § 1030(e)(8).

[70]

*Id.* § 1030(e)(11).

interruption of computer service.[71]

The damages definitions likewise are inconsistent or in tension with a broader interpretation of improper "access."   The Second Circuit held in *Nexan Wires S.A. v. Sark-USA, Inc.*,[72] that a claimant may recover lost revenue pursuant to the CFAA only when a loss is "connected to an interruption of service."[73]   It there upheld the district court's ruling that the plaintiff could not recover revenue lost "as a result of defendants' ability to unfairly compete for business" where the defendants misappropriated the plaintiff's proprietary information.[74]   The Second Circuit's decision therefore denies CFAA claimants a remedy for competitive harm suffered as a result of misuse or misappropriation.[75]

Further, the rule of lenity guides the Court's interpretation of the CFAA, which is primarily a criminal statute.   "The rule of lenity, a manifestation of the fair warning requirement, 'ensures fair warning by so resolving ambiguity in a criminal statute as to apply it only to conduct clearly covered.'"[76]  It would be imprudent to interpret the CFAA, in a manner inconsistent with its

---

[71]

See Jet One Group, 2009 WL 2524864, at *6.

[72]

166 Fed. Appx. 559 (2d Cir. 2006).

[73]

*Id.* at 562-63.

[74]

*See Nexans Wires S.A. v. Sark-USA, Inc.*, 319 F. Supp. 2d 468, 477 (S.D.N.Y. 2004).

[75]

See Jet One Group, 2009 WL 2524864, at *6.

[76]

*United States v. Velastegui*, 199 F.3d 590, 593 (2d Cir. 1999) (quoting *United States v. Lanier*, 520 U.S. 259, 266, 117 S. Ct. 1219 (1997)).

plain meaning, to transform the common law civil tort of misappropriation of confidential information into a criminal offense.[77]

> Here Numerex asserts that the Ronsen, Rosenzweig, and Naden took its electronic proprietary information "prior to leaving the company" for the purpose of competing with Numerex.[78]   As Numerex's executives, they concededly were granted unfettered access to Numerex's computer system and information residing on it.  In consequence, Numerex has failed to adduce any evidence that they accessed its computer system without authorization or exceeded their authorized access in violation of the CFAA.  The claim therefore is dismissed.

### B.     Other Counterclaims

> There remain genuine issues of fact material to Numerex's counterclaims for breach of the APA, fraudulent inducement,[79] breach of fiduciary duty, breach of the implied covenant of good faith and fair dealing, misappropriation, conversion, and a declaratory judgment as to the noncompetition periods.  Numerex has adduced evidence sufficient for a rational trier of fact to

---

[77]
> > *See Jet One Group*, 2009 WL 2524864, at *6; *Shamrock Foods*, 535 F. Supp. 2d at 966-67.

[78]
> > Numerex 56.1 St. ¶¶ 175-76.

[79]
> > Although Ronsen, Rosenzweig, and Naden vigorously dispute the admissibility of evidence concerning the amount of damages Numerex may recover for fraudulent inducement and the reliability of assumptions underlying its damages calculation, they have not established the absence of a genuine issue of material fact as to the *existence* of damages.  *See, e.g.*, *In re Executive Telecard, Ltd. Secs. Litig.*, 979 F. Supp. 1021, 1028 (S.D.N.Y. 1997) (denying summary judgment and holding that "although defendants have demonstrated that the Expert Witness' proposed testimony is insufficiently reliable to be admitted at trial to prove the *amount* of damages, they have not demonstrated that there is no genuine issue of material fact as to the existence of damages") (emphasis in original).

conclude, among other things, that Orbit breached its representations and warranties in the APA and that Ronsen, Rosenzweig, and Naden took proprietary information from Numerex upon their departure from the company.  In consequence, summary judgment dismissing these claims would be inappropriate.  By the same token, Numerex has not demonstrated an absence of genuine issues of fact material to their claims for relief.

*Conclusion*

For the foregoing reasons, Numerex's motion for summary judgment [08 Civ. 0905 DI 122, 08 Civ. 11195 DI 27] is granted to the extent that (1) Orbit's and Ronsen's claims for breach of the APA for lack of corporate support, breach of the implied covenant of good faith and fair dealing, and unjust enrichment and (2) Rosenzweig's and Naden's claim for tortious interference with prospective economic advantage are dismissed and denied in all other respects.  Rosenzweig's and Naden's motion for partial summary judgment [08 Civ. 6233 DI 89] is granted to the extent that Numerex's counterclaim for a declaration that Rosenzweig and Naden were terminated "for cause" is dismissed and denied in all other respects.  The motion of Ronsen, Rosenzweig, and Naden for summary judgment [08 Civ. 0905 DI 130, 08 Civ. 11195 DI 33] is granted to the extent that Numerex's counterclaim for violation of the CFAA is dismissed and denied in all other respects.

SO ORDERED.

Dated:          March 10, 2010

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)